**BUBB, GROGAN & COCCA, LLP**
25 Prospect Street
Morristown, NJ  07960
(973) 539-6500; Fax (973) 539-6409
Attorneys for Plaintiffs

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC HEALTH SYSTEM, INC., AHS HOSPITAL CORP., and ATLANTIC AMBULANCE CORP., | : Civil Action No. 2:08-cv-01661 : (GEB) : : : |
| Plaintiffs, | : **NOTICE OF CROSS-MOTION FOR** : **SUMMARY JUDGMENT** : |
| v. | : : |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a member company of American International Group and AMERICAN INTERNATIONAL GROUP, individually, | : : : : : : : |
| Defendants. | |

To:   Sean Kelly, Esq.
      Saiber LLC
      One Gateway Center, 13th Floor
      Newark, NJ 07102-5311

**PLEASE   TAKE   NOTICE** that   on   February   2,   2010,

Plaintiffs ATLANTIC HEALTH SYSTEM, INC., AHS HOSPITAL

CORP., and ATLANTIC AMBULANCE CORP. (collectively,

"Plaintiffs"), by and through their attorneys, Bubb Grogan

& Cocca, LLP, will cross-move before the Honorable Garrett

E. Brown, Chief Judge, United States District Court,

District of New Jersey, Clarkson S. Fisher Building & U.S.

Courthouse, 402 East State Street, Trenton, New Jersey, for an Order:

a.   Denying Defendants' Motion for Summary Judgment; and

b.   Granting Plaintiffs summary judgment against Defendants National Union Fire Insurance Company of Pittsburgh, PA, ("National Union") and American International Group, (collectively "Defendants");

c.   Setting the matter down for the submission of Affidavits and/or a plenary hearing; and

d.   Granting Plaintiffs such other relief as the Court deems just, proper and/or appropriate.

**PLEASE TAKE FURTHER NOTICE** that in support of said cross-motion, the Plaintiffs will rely on the Brief, Statement of Material Facts, and Certification of Maria L. Zarrella (with exhibits) submitted herewith, and such other papers as may be submitted in further support of this motion.

A proposed form of Order accompanies this Notice of Cross-Motion. The moving party is requesting oral argument of this motion.

BUBB, GROGAN & COCCA, LLP
Attorneys for Plaintiffs

By: /s/Michael S. Bubb
        Michael S. Bubb, Esq.

Dated:    December 6, 2010

*6307*

**MICHAEL S. BUBB, Esq.**
**BUBB, GROGAN & COCCA, LLP**
**25 Prospect Street**
**Morristown, NJ  07960**
**(973) 539-6500; Fax (973) 539-6409**
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLANTIC HEALTH SYSTEM, INC., AHS HOSPITAL CORP., and ATLANTIC AMBULANCE CORP., | : Civil Action No. 2:08-cv-01661<br>: (GEB)<br>:<br>:<br>: |
| Plaintiffs, | : **PLAINTIFFS' RESPONSE TO**<br>: **DEFENDANTS' STATEMENT OF** |
| v. | : **UNDISPUTED MATERIAL FACTS AND**<br>: **STATEMENT OF ADDITIONAL**<br>: **UNDISPUTED FACTS IN SUPPORT OF** |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a member company of American International Group and AMERICAN INTERNATIONAL GROUP, individually, | : **SUMMARY JUDGMENT MOTION**<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | |

**Plaintiffs'  Response  to  Defendants'  Statement  of  Undisputed Material Facts:**

Plaintiffs Atlantic Health System Inc., AHS Hospital Corp., and Atlantic Ambulance Corp. (collectively "Plaintiffs") submit the following response to the Statement of Material Undisputed Facts submitted by Defendants National Union Fire Insurance Company of Pittsburgh, PA, ("National Union") and American International Group, (collectively "Defendants").

1.    Admitted for purposes of the Summary Judgment Motion.

2.    Disputed.    Plaintiffs   dispute   the   Statement   as written.   For purposes of this Motion, Plaintiffs admit that on or about February 6, 2004, Maxwell M. Blecher sent a letter to Stephen Sepaniak, General Counsel of Atlantic Health Systems, Inc., ("AHS") enclosing a draft complaint on behalf of Med Alert Ambulance, Inc., ("Med Alert") against AHS, Atlantic Ambulance Corp., and Newton Memorial Hospital.   *See,* Certification of Sean R. Kelly ("Kelly Certif."), Exhibit D.   The letter indicates the documents were sent via federal express.   *Id.*

3.    Admitted for purposes of this Motion.

4.    Admitted for purposes of this Motion.

5.    Disputed as written.   Plaintiffs admit that, in the course of business, Marsh sent a document dated July 23, 2004 to National Union, but dispute Defendants' characterization of the letter and refer to the document which speaks for itself.   *See* Kelly Certif., Exhibit F.

6.    Admitted for purposes of this Motion.

7.    Disputed as written.   Plaintiffs admit that Marsh sent a letter to National Union dated August 17, 2004, but dispute Defendants' characterization of the letter and refer to the document which speaks for itself.   *See* Kelly Certif., Exhibit H.

8.    Plaintiffs   dispute   the   statement   as   written. Plaintiffs admit that Natalie C. Louis of AIG sent a letter

2

dated March 15, 2005 to Robert J. Beyer of Marsh, in which Ms. Louis stated:

> This suit was filed against the Insured on April 5, 2004. Pursuant to the terms of the policy, this means that the Insured was required to give National Union notice of this matter by the latest May 5, 2004 which would have been 30 days after the date the claim was made against the Insured. Because the Insured did not provide us with notice under policy number 382-77-89 until August 18, 2004, which is stated in your own letter dated September 7, 2004, the submission violates the claims made and reported provision of the policy and is thereby not covered.

> *See,* Kelly Certif., Exhibit I, page 2.

Plaintiffs dispute the statements made by Ms. Louis in the letter, including but not limited to the statement that the insured did not provide National Union with timely notice under policy number 382-77-89. In fact, Plaintiffs provided National Union with actual notice of the Med Alert Claim on or before May 1, 2004. *See,* Kelly Certif., Exhibit J, Renewal Application, Question 27, DEF 0131, and Certification of Maria L. Zarrella ("Zarrella Certif."), Exhibit A, DEF 0138, and Exhibit E, Defendants' Response to Plaintiffs' Second Request for Admissions.

9. Plaintiffs dispute the statement as written. For purposes of this Motion, Plaintiffs admit that Cynthia Hoen, Assistant General Counsel for AHS, was copied on the July 23, 2004 letter from Marsh to AIG Technical Services, and the August 17, 2004 letter from Marsh to AIG Insurance Company.

Plaintiffs dispute the remainder of the statement set forth in paragraph 9, as Defendants have not cited to affidavits or documents in the record in support of the statement, as required by Local Civil R. 56.1(a).

10. Plaintiffs dispute the statement as written. Plaintiffs admit that during the 2003 to 2004 Policy Period, AHS submitted documents to National Union in connection with the renewal of AHS's insurance policy, including one or more completed, signed American International Companies Not-For-Profit Individual and Organization Insurance renewal applications. *See,* Kelly Certif., Exhibit K; Zarrella Certif., Exhibit A. Plaintiffs admit that the renewal application was submitted to Christine McSweeny, but dispute the allegation that Ms. McSweeny was an underwriter for AIG-Middle Market Division. Christine McSweeny was a Senior Underwriter for National Union. *See,* Affidavit of Angelo Manganiello, ("Manganiello Aff."), ¶¶1 and 5.

11. Plaintiffs admit the statements in paragraph 11, with the qualification that the renewal application required AHS to respond "YES" or "NO" to questions 27(a) through 27(d), and that AHS responded "YES" to questions 27(a), 27(b) and 27(d) of the Renewal Application. *See,* Kelly Certif., Exhibit K, Renewal Application, DEF 0131.

4

12. Plaintiffs admit the statement of paragraph 12, with the qualification that Christine McSweeny was an underwriter for National Union. *See,* Manganiello Aff., ¶¶1, 3 and 5.

13. Disputed. Initially, Plaintiffs object to paragraph 13, insofar as the statement therein sets forth a legal conclusion as to what is "required" by the written insurance contracts. Subject to and without waiving said objection, Plaintiffs dispute the statements of paragraph 13, as an incomplete recitation of the written insurance contracts, and refer the Court to the written documents for a complete recitation of their terms and provisions. *See,* Kelly Certif., Exhibits A, B and C.

Subject to the foregoing, Plaintiffs respond as follows:

Plaintiffs admit that Policy Number 280-64-57 (2000-2003 Policy) contains the following provision:

> 7. Notice hereunder shall be given in writing to National Union Fire Insurance Company of Pittsburgh, Pa, Financial Services Claims Department, 175 Water Street, New York, NY 10038. If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

*See,* Kelly Aff., Exhibit A, DEF 0555.

Plaintiffs admit that Policy Number 382-77-89 (2003-2004 Policy) contains the following provision:

> 7. Notice hereunder shall be given in writing to the Insurer Named in Item 8 of the

5

> Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

*See,* Kelly Aff., Exhibit B, DEF 0617.

Plaintiffs admit that Policy Number 382-77-89 (2003-2004 Policy) also contains the following provision:

> ITEM 8.   Name and Address of Insurer (hereinafter "Insurer"):
> (This policy is issued only by the insurance company indicated below.)
> National Union Fire Insurance Company of Pittsburgh, Pa.
> 175 Water Street
> New York, NY 10038

*See,* Kelly Certif., Exhibit B, DEF 0607.

Plaintiffs admit that Policy Number 382-77-89 (2003-2004 Policy) also contains the following provision:

> In consideration of the premium charged, it is hereby understood and agreed that Clause 7(a) is deleted in its entirety and replaced with the following:
>
> (a) The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable after the Claim is reported to or first becomes known by the risk manager (or equivalent position) of the Organization, but in all events, a Claim must be reported no later than either;
> (1) Anytime during the Policy Period or during the Discovery Period (if applicable)' or
> (2) Within thirty (30) days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claims(s) is reported no later than thirty (30) days after the

date such Claim was first made against an
Insured.

*See,* Kelly Certif., Exhibit B, Endorsement 13, DEF
0662.

Plaintiffs further admit that Policy Number 316-29-70
(2004-2005 Policy) contains the following provision:

> 7. Notice hereunder shall be given in writing to
> the Insurer Named in Item 8 of the Declarations
> at the address indicated in Item 8 of the
> Declarations. If mailed, the date of mailing
> shall constitute the date that such notice was
> given and proof of mailing shall be sufficient
> proof of notice.

*See,* Kelly Certif., Exhibit C, DEF 0310.

Plaintiffs admit that Policy Number 316-29-70 (2004-2005
Policy) also contains the following provision:

> ITEM 8.   Name and Address of Insurer
>           (hereinafter "Insurer"):
>           (This policy is issued only by the
>           insurance company indicated below.)
>           National Union Fire Insurance Company
>           of Pittsburgh, Pa.
>           175 Water Street
>           New York, NY 10038

*See,* Kelly Certif., Exhibit C, DEF 0299.

Plaintiffs admit that Policy Number 316-29-70 (2004-2005
Policy) also contains the following provision:

> In consideration of the premium charged, it is
> hereby understood and agreed that Clause 7.
> NOTICE REPORTING PROVISIONS, paragraph (a) is
> deleted in its entirety and replaced with the
> following:
>
> (b) The Insureds shall, as a condition precedent
> to the obligations of the Insurer under this

policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable after the Claim is reported to or first becomes known by the general counsel (or equivalent position) of the Organization, but in all events, a Claim must be reported no later than either;

(1) Anytime during the Policy Period or during the Discovery Period (if applicable)' or
(2) Within thirty (30) days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claims(s) is reported no later than thirty (30) days after the date such Claim was first made against an Insured.

See, Kelly Certif., Exhibit C, Endorsement 12, DEF 0369.

14. Disputed. Initially, Plaintiffs object to the statement in paragraph 14, insofar as the statement therein sets forth a legal conclusion as to what is "required" by the written insurance contracts, which is outside the scope of Local Civ. R. 56.1. Subject to and without waiving the foregoing objection, Plaintiffs dispute the statement of paragraph 14 as to what is required by the insurance policies. See, Kelly Exhibits A, B and C. Plaintiffs submit that AHS complied with the terms of the Policies in providing actual notice to National Union of the Med Alert claim. See, Kelly Exhibit K, Zarrella Certif., Exhibit A. Furthermore, Plaintiffs dispute the remainder of the statement insofar as the affiant, Martha S. Keane, does not have personal knowledge to support the statement, and is speculating

8

as to what "appears" to be the case, based upon review of documents. *See,* Affidavit of Martha S. Keane, ¶¶9-10.

**15.** Plaintiffs dispute the statement in paragraph 15, insofar as Defendants have not set forth a citation to the record and the statement does not comply with Local Civil R. 56.1.

**Plaintiffs' Statement of Additional Undisputed Material Facts:**

Pursuant to Local Civil R. 56.1, Plaintiffs submit the following Statement of Additional Material Undisputed Facts in opposition to Defendants' Motion for Summary Judgment and in support of Plaintiffs' Cross-Motion for Summary Judgment.

16. National Union issued Policy Number 382-77-89 to AHS. *See,* Kelly Certif., Exhibit B, DEF 0617.

17. Policy Number 382-77-89 provides coverage to AHS for claims alleging violations of state and federal anti-trust statutes. *See,* Kelly Certif., Exhibit B, DEF 0663-0665.

18. Policy Number 382-77-89 contains the following provision:

> 7. Notice hereunder shall be given in writing to the Insurer Named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.
>
> *See,* Kelly Certif., Exhibit B, DEF 0617.

9

19.   Policy Number 382-77-89 states the following:

ITEM 8.   Name      and      Address      of      Insurer
(hereinafter "Insurer"):
              (This   policy   is   issued   only   the
              insurance company indicated below.)
              National   Union   Fire   Insurance   Company
              of Pittsburgh, Pa.
              175 Water Street
              New York, NY 10038

*See,* Kelly Certif., Exhibit B, DEF 0607.

20.   Endorsement No. 13 to Policy Number 382-77-89 states:

In   consideration   of   the   premium   charged,   it   is
hereby   understood   and   agreed   that   Clause   7(a)   is
deleted   in   its   entirety   and   replaced   with   the
following:

              (a)   The   Insureds   shall,   as   a   condition
              precedent   to   the   obligations   of   the
              Insurer   under   this   policy,   give   written
              notice   to   the   Insurer   of   any   Claim   made
              against   an   Insured   as   soon   as   practicable
              after   the   Claim   is   reported   to   or   first
              becomes   known   by   the   risk   manager   (or
              equivalent   position)   of   the   Organization,
              but   in   <u>all</u>   events,   a   Claim   must   be
              reported no later than either;
              (1)      Anytime   during   the   Policy   Period
              or   during   the   Discovery   Period   (if
              applicable)' or
              (2)      Within   thirty   (30)   days   after   the
              end   of   the   Policy   Period   or   the
              Discovery   Period   (if   applicable),   as
              long   as   such   Claims(s)   is   reported   no
              later   than   thirty   (30)   days   after   the
              date   such   Claim   was   first   made   against
              an Insured.

*See,* Kelly   Certif.,   Exhibit   B,   Endorsement
13, DEF 0662.

21. Paragraph 7 of Policy Number 382-77-89 does <u>not</u> contain any reference to "National Union Fire Insurance Company of Pittsburgh, Pa, Financial Services Claims Department." *See,* Kelly Certif., Exhibit B, DEF 0617.

22. Item 8 of the Declarations of Policy Number 382-77-89 does <u>not</u> contain any reference to "National Union Fire Insurance Company of Pittsburgh, Pa, Financial Services Claims Department." *See,* Kelly Certif., Exhibit B, DEF 0607.

23. The policy period for Policy Number 382-77-89 was May 1, 2003 to May 1, 2004. *See,* Kelly Certif., Exhibit B.

24. In connection with the renewal of Policy Numnber 382-77-89, AHS submitted a handwritten renewal application to National Union (hereinafter the "Handwritten Application."). *See,* Zarrella Certif., Exhibit A, and Exhibit E, Defendants' Response to Plaintiffs' Second Request for Admissions, no. 4.

25. The Handwritten Application set forth the following information:

> 21. Has the Applicant, any of its Subsidiaries, any of its Affiliates or any Director, Officer, or Trustee:
>
> (a) Been involved in any antitrust, copyright or patent litigation?
> X Yes __ No
>
> (b) Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state antitrust or fair trade law?   X Yes __ No

11

(c)  Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state securities law or regulation?                    __Yes  X No

(d)  Been involved in any representative actions, class actions, or derivative suits?
                                              X Yes  __No

If any of the above, 21(a)-21(d) is "yes," attach full details.

AHS has periodically been a plaintiff member of a class in actions for refunds against vendors.

Atlantic Health System and Atlantic Ambulance have been named, together with Newton Memorial Hospital, in a civil action filed by Med Alert Ambulance Co. alleging unfair trade practices + anti-trust violation with respect to the transport of cardiac patients from Newton to Morristown Memorial.

*See,* Zarrella Certif., Exhibit A, and Defendants' Response to Second Request for Admissions, Exhibit E, no. 4.

26.  The Handwritten Application stated in part,

IT IS AGREED THAT THIS APPLICATION SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED, AND IT WILL BE ATTACHED TO AND BECOME PART OF THE POLICY.

*See,* Zarrella Certif., Exhibit A, DEF 0139.

27.  National Union received and reviewed the Handwritten Renewal Application prior to April 7, 2004.  *See,* Zarrella Certif., Exhibit E, Defendants' Response to Plaintiffs' Request for Admissions, no. 9.

28.  Angelo Manganiello was employed by National Union as an underwriter.  *See,* Affidavit of Angelo Manganiello, par. 1.

12

29. In or about 2004, Angelo Manganiello was assigned as the underwriter in connection with the renewal of Policy Number 382-77-89. *See,* Zarrella Certif., Exhibit C, Manganiello Tr. 16:18 to 17:9.

30. Angelo Manganiello received and reviewed the Handwritten Renewal Application prior to April 7, 2004. *See,* Zarrella Certif., Exhibit E, Defendants' Response to Plaintiffs' Request for Admissions, no. 9; and Exhibit C, Manganiello, Tr. 59:20 to 61:20, and 67:14 to 69:7.

31. In connection with the renewal application, Mr. Manganiello performed a claims check, which involved speaking to individuals assigned on behalf of National Union to handle claims against AHS. *See,* Zarrella Certif., Exhibit C, Manganiello Tr. 29:5-22, and 34:36:15.

32. Angelo Manganiello did not recall communicating with anyone in the claims department of National Union regarding the information set forth in the Handwritten Renewal Application relating to the Med Alert Action. *See,* Zarrella Certif., Exhibit C, Manganiello Tr. 75:5-23.

33. AHS submitted a typed renewal application ("Typed Application") to National Union. *See,* Kelly Certif., Exhibit K.

34. Angelo Manganiello received and reviewed the Typed Application during the 2003-2004 Policy Period. *See,* Kelly

Certif., Exhibit K; Zarrella Certif., Exhibit C, Manganiello Tr., 63:15 to 64:10, and 61:8-20.

35.    The Typed Application stated, in part:

> 27.    AHS and Atlantic Ambulance have been named, together with Newton Memorial Hospital, in a civil action filed by MedAlert Ambulance Co. alleging unfair trade practices and anti-trust violations with respect to the transport of cardiac patients from Newton to Morristown Memorial.

*See,* Kelly Certif., Exhibit K, DEF 0131.

36.    National Union received a copy of the Complaint in the Med Alert Action in or about July, 2004.  *See,* Kelly Certif., Exhibit F, and Exhibit G.

37.    National Union denied coverage to Plaintiffs for the claims set forth in the Med Alert Action under Policy Number 316-29-70.  *See,* Kelly Certif., Exhibit G.

38.    In or about 2004, Natalie Louis was employed by AIG. *See,* Zarrella Certif., Exhibit D, Tr. 13:13-23; 17:12-22.

39.    Ms. Louis was assigned, on behalf of National Union, to handle the claim asserted against Plaintiffs in the Med Alert Action.  *See,* Kelly Certif., Exhibit G.

40.    In connection with the August 12, 2004 letter, Ms. Louis reviewed Policy Number 316-29-70.  *See,* Zarrella Certif., Exhibit D, Tr. 111:12-13.

41. The renewal application was part of Policy Number 316-29-70. *See,* Kelly Certif., Exhibit K, DEF 0132, and Zarrella Certif., Exhibit A, DEF 0139.

42. National Union denied coverage to Plaintiffs for the claims set forth in the Med Alert Action under Policy Number 382-77-89. *See,* Kelly Certif., Exhibit I.

43. The letter from Natalie Louis denying coverage for the Med Alert Action under Policy Number 382-77-89 is dated March 15, 2005, more than seven months after Ms. Louis received a copy of the Complaint in the Med Alert Action. *See,* Kelly Certif., Exhibit G and Exhibit I.

44. In her letter dated March 15, 2005, Ms. Louis states, "Because the Insured did not provide us with notice under policy number 382-77-89 until August 18, 2004, which is stated in your own letter dated September 7, 2004, the submission violates the claims made and reported provision of the policy and is thereby not covered." *See,* Kelly Certif., Exhibit I.

45. Ms. Louis did not advise AHS that the information in the Renewal Application regarding the claim asserted by Med Alert was insufficient to satisfy the notice requirements of Policy 382-77-89. *See,* Kelly Certif., Exhibit I.

46. Plaintiffs paid Med Alert the sum of $800,000 pursuant to an Offer of Judgment in the Med Alert Action. *See,* Zarrella Certif., Exhibits F, G and H.

15

47. Plaintiffs incurred attorney fees in the amount of $1,368,145.49 in defending the claims in the Med Alert matter. *See,* Zarrella Certif., Exhibit I, Interrogatory No. 12, and Rider A.

Respectfully submitted,

BUBB, GROGAN & COCCA, LLP
Attorneys for Plaintiffs

By: _____/s/Michael S. Bubb_____
     Michael S. Bubb

Dated: December 6, 2010

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC HEALTH SYSTEM, INC., AHS HOSPITAL CORP., and ATLANTIC AMBULANCE CORP., | : Civil Action No. 2:08-cv-01661 : (GEB) : : : |
| Plaintiffs, | : **Return Date:  February 2, 2011** : : |
| v. | : *Oral Argument Requested* : |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a member company of American International Group and AMERICAN INTERNATIONAL GROUP, individually, | : : : : : : : |
| Defendants. | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

**BUBB GROGAN & COCCA, LLP**
**25 Prospect Street**
**Morristown, NJ  07960**
*Attorneys for Plaintiffs*
25 Prospect Street
Morristown, NJ  07960

On the Brief:
Michael S. Bubb, Esq.
Maria L. Zarrella, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................. iii

FACTUAL BACKGROUND....................................................................................... 1

    The National Union Policies............................................................ 1

    The Application and Notice of the
    Med-Alert Claim.............................................................................. 4

LEGAL ARGUMENT............................................................................................. 10

    POINT I    SUMMARY JUDGMENT IS PROPER WHERE
             THERE IS NO GENUINE ISSUE AS TO
             A MATERIAL FACT................................................... 10

    POINT II   DEFENDANTS BREACHED THEIR
             OBLIGATION TO PROVIDE COVERAGE TO
             PLAINTIFFS FOR THE CLAIMS ASSERTED
             IN THE MED-ALERT ACTION......................................... 11

             A.    National Union Had Actual
                      Notice Of The Claim Asserted
                      By Med-Alert During The
                      2003-2004 Policy Period........................... 11

             B.    AHS Satisfied The Notice
                      Requirements Set Forth In The
                      Policy............................................................ 15

             C.    The Application Satisfies The
                      Notice Provision In The Policy,
                      Where, As Here It Provides The
                      Insurer With Actual Notice Of
                      The Claim.................................................... 18

             D.    National Union Waived Its Right
                      To Argue That The Information In
                      The Renewal Application Does Not
                      Comply With The Notice
                      Requirements Of The Policy.................... 28

POINT III   THE MATTER SHOULD BE SET DOWN FOR
            A HEARING ON THE REASONABLENESS OF
            THE OFFER OF JUDGMENT AND ATTORNEY
            FEES INCURRED DEFENDING THE
            MED-ALERT ACTION.................................................. 31

POINT IV    PLAINTIFFS ARE ENTITLED TO AN AWARD
            OF ATTORNEY FEES PURSUANT TO NEW
            JERSEY COURT RULE 4:42-9............................... 33

POINT V     DEFENDANTS' MOTION FOR SUMMARY
            JUDGMENT MUST BE DENIED................................. 35

            A.   At A Minimum, Genuine Issues Of
                 Fact Exist As To Whether Actual
                 Notice Set Forth In The
                 Application Satisfies The
                 Requirements Of The Policy...................... 36

            B.   AIG's Motion For Summary
                 Judgment Must Be Denied............................. 39

CONCLUSION...................................................................................... 40

## TABLE OF AUTHORITIES

**Cases**

American Cas. Co. v. FDIC, 821 F. Supp. 655 (W.D. OK 1993) ............................................................. . ................ 22

American Cas. Co. v. FDIC, 944 F.2d 455 (8th Cir. 1991) ...................................................................... 22

American Cas. Co. v. RTC, 1993 U.S. Dist. LEXIS 19298 (D. Md. Nov. 1, 1993)................................ 22

American Cas. Co. of Reading, PA v. Continisio, 819 F. Supp. 385 (D.N.J. 1993), aff'd, 17 F.3d 62 (3d Cir. 1994)........................................................ 19

American Cas. Co. of Reading, PA v. Continisio, 17 F.3d 62 (3d Cir. 1994)................................ . ...... 19-24

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)................................................................... 10-11

Baughman v. United States Liability Insurance Company, 2010 U.S. Dist. LEXIS 69641 (D.N.J. 2010)......... 34

Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358 (3d Cir. 1992)................................ 35

Butler v. Bonner & Barnewall, Inc., 56 N.J. 567 (1970)............................................................. 33

California Union Ins. Co. v. American Diversified Sav. Bank, 914 F.2d 1271 (9th Cir. 1990), cert. denied, 498 U.S. 1088 (1991)............................ 22

Cobra Prods Inc. v. Fed. Ins. Co., 317 N.J. Super. 392 (App. Div. 1998), certif. denied, 160 N.J. 89 (1999)............................................ 26

County of Hudson v. Selective Ins. Co., 332 N.J. Super.107 (App. Div. 2000)................................ 27

CSR Limited v. CIGNA Corporation, 2006 U.S. Dist. LEXIS 8149 (D.N.J. 2006)................................ 36-37

iii

FDIC v. Continental Cas. Co., 796 F. Supp. 1344 (D.C. Or. 1991).............................................................. 22

FDIC v. Interdonato, 988 F. Supp. 1 (D.D.C. 1997), aff'd, 172 F.3d 919 (D.C. Cir. 1998)........................... 23, 28

FDIC v. St. Paul Fire & Marine Ins. Co., 993 F.2d 155 (8th Cir. 1993)....................................................... 22

Federal Savings and Loan Insurance Corporation v. Burdette, 718 F. Supp. 649 (E.D. Tenn. 1989).......................... 28

Griggs v. Bertram, 88 N.J. 347 (1982)........................ 31

Iafelice v. Arpino, 319 N.J. Super. 581 (App. Div. 1999)............................................................ 33, 34

Jefferson Ins. Co. v. Health Care Ins. Exchange, 247 N.J. Super. 241 (App. Div. 1991)........................ 32

JP Morgan Chase & Co. v. The Travelers Indemnity Company, 22 Misc. 3d 1111A (New York 2009)................. 28-29

LaForge v. The Am.Cas.Co. of Reading, Pennsylvania, 37 F.3d 580 (10th Cir. 1994).................................. 25-26

Lehrhoff v. Aetna Casualty and Surety Company, 271 N.J. Super. 340 (App. Div. 1994)........................ 27-28

Liberty Village v. West American Ins., 308 N.J. Super. 393 (App. Div.), certif. denied, 154 N.J. 609 (1998)........................................................ 33, 34

Longobardi v. Chubb Ins. Co., 121 N.J. 530 (1990)......... 26

Meier v. New Jersey Life Ins. Co, 101 N.J. 597 (1986).......................................................... 26

National Union Fire Ins. Co. v. Baker & McKenzie, 997 F.2d 305 (7th Cir. 1993)................................ 22-23

Nav-Its, Inc. v. Selective Ins. Co. of America, 183 N.J. 110 (2005)............................................ 27

Newsome v. Administrative Office of the Courts, 103 F. Supp. 2d 807 (D.N.J. 2000)......................... 35

*Owens-Illinois, Inc. v. United Ins. Co.*, 264 N.J. Super. 460 (App. Div. 1993).......................................................... 27

*Royal Ins. Co. v. KSI Trading Corp.*, 563 F.3d 68, (3d Cir. 2009)........................................................................... 26

*Russell v. Rutgers Casualty Ins. Co.*, 234 N.J. Super. 175 (App. Div. 1989)........................................................ 33

*Seidenberg v. The Mutual Life Insurance Company Of New York*, 949 F. Supp. 269 (D. N.J. 1996)...................... 27

*St. Paul Fire & Marine Ins. Co.*, 993 F.2d 155 (8th Cir. 1993)............................................................................. 22

*The Putney School v. Schaaf*, 157 Vt. 396, 599 A.2d 322(Vt. Supreme 1991)........................................................ 16-17, 18

*Watts v. University of Delaware*, 622 F.2d 47 (3d Cir. 1980).................................................................................. 35

*Zuckerman v. National Union*, 100 N.J. 304 (1985)............. 11, 12-13, 29


**Federal Court Rules**

Fed.R.Civ.P. 56 ......................................................................... 10

Fed.R.Civ.P. 68........................................................................... 32

Local Civil Rule 54.2.................................................................. 32, 35

**N.J. Court Rules**

4:42-9(a)(6)................................................................................. 10, 33-35

**Other Authorities**

Works, Bob *"Excusing Nonoccurrence of Insurance Policy Conditions in Order to Avoid Disproportionate Forfeiture:  Claims Made Formats as a Test Case,"* 5 Conn. Ins. L.J. 505 (1998/1999)............................................ 11

Pressler, *Current New Jersey Court Rules,* Comment To Rule 4:42-9(a)(6) .................................................................. 33, 34

**FACTUAL BACKGROUND**

**THE NATIONAL UNION POLICIES**

Atlantic Health System, Inc., ("AHS") is a not-for-profit corporation that owns hospital facilities in New Jersey. AHS Hospital Corp. and Atlantic Ambulance Corporation are subsidiaries of AHS. In connection with its operations, AHS maintained several policies of insurance with defendant National Union Fire Insurance Company of Pittsburgh, P.A., ("National Union"), a subsidiary of American International Group ("AIG"). National Union issued a Directors, Officers and Trustees Insurance and Not-for-Profit Organization Reimbursement Policy to AHS, bearing policy number 280-64-57, with effective dates of May 1, 2000 to May 1, 2003, (the "2000-2003 Policy"). *See,* Certification of Sean R. Kelly ("Kelly Certif."), Exhibit A. The 2000-2003 Policy was a renewal of an insurance policy bearing policy number 485-32-76. *See,* Kelly Certif., Exhibit A, DEF 0551. The 2000-2003 Policy provided coverage to AHS and its subsidiaries for "Wrongful Acts," including an alleged violation of the Sherman Antitrust Act, or any similar federal, state or local statute or rule prohibiting such anti-competitive activity. *See,* Kelly Certif., Exhibit A, DEF 0589.

AHS renewed the 2000-2003 Policy for the policy period of May 1, 2003 to May 1, 2004, under Policy Number 382-77-89 (the

1

"2003-2004 Policy"). *See,* Kelly Certif., Exhibit B, DEF 0605. Similar to the 2000-2003 Policy, the 2003-2004 Policy provided coverage for claims alleging violations of state and federal anti-trust statutes. *See,* Kelly Certif., Exhibit B, Endorsement 14, DEF 0663-0665.

Both the 2000-2003 Policy and the 2003-2004 Policy did not contain any guidance on the form of notice required to report a claim. The 2000-2003 Policy simply stated that the Insured shall give written notice to the Insurer of any Claim made against the Insured "as soon as practicable." *See,* Kelly Certif., Exhibit A, DEF 0555. The 2000-2003 Policy also stated that notice was to be given to "National Union Fire Insurance Company of Pittsburgh, Pa., Financial Services Claims Department, 175 Water Street, New York, NY 10038." *See,* Kelly Certif., Exhibit A, DEF 0555, (emphasis supplied). There were no other provisions in the policy relating to the form or content of the notice required under the policy.

National Union amended the notice provisions in the 2003-2004 Policy. First, the 2003-2004 Policy deleted the reference to National Union's Claims Department. *See,* Kelly Certif., Exhibit B, DEF 0617. The 2003-2004 Policy provides only that written notice shall be sent to National Union. *Id.* In that regard, the 2003-2004 Policy provides in relevant part:

2

> 7.   Notice hereunder shall be given in writing to the Insurer Named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations.   If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

> See, Kelly Certif., Exhibit B, DEF 0617.

Item 8 of the Declarations Page identifies the Insurer as "National Union Fire Insurance Company of Pittsburgh, Pa., 175 Water Street, New York, NY 10038." See, Kelly Certif., Exhibit B, DEF 0607.   There is no reference to the Claims Department in Item 8 of the Declarations, or in any other policy provision pertaining to "notice" of a "claim." Id.

The 2003-2004 Policy also contains "Endorsement No. 13" amending the notice provisions of Paragraph 7 in a manner that was more favorable to AHS.   In that regard, Endorsement No. 13 provides:

### Notice of Claim to Risk Manager

> In consideration of the premium charged, it is hereby understood and agreed that Clause 7(a) is deleted in its entirety and replaced with the following:

>> (a) The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable after the Claim is reported to or first becomes known by the risk manager or general counsel (or equivalent position) of the Organization, but in all events, a

3

> Claim must be reported no later than either;
> (1)    Anytime during the Policy Period or during the Discovery Period (if applicable)' or
> (2)    Within thirty (30) days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claims(s) is reported no later than thirty (30) days after the date such Claim was first made against an Insured.

> See, Kelly Certif., Exhibit B, Endorsement 13, DEF 0661.

The 2003-2004 Policy contains two versions of Endorsement No. 13. The second version of Endorsement No. 13 eliminated the reference to general counsel, stating that the Insured shall give notice of a claim after the claim is reported to the Risk Manager. See, Kelly Certif., Exhibit B, Endorsement 13, DEF 0662.

## THE APPLICATION AND NOTICE OF THE MED-ALERT CLAIM

In or about February of 2004, Stephen Sepaniak, General Counsel of AHS, received a letter from an attorney enclosing a draft Complaint against AHS and Atlantic Ambulance Corp. on behalf of a company called Med Alert Ambulance, Inc. ("Med Alert"). See, Kelly Certif., Exhibit D. The draft complaint alleged, inter alia, violations of federal and state anti-trust statutes, and sought compensatory damages, in addition to other relief. See, Kelly Certif., Exhibit D, AHS 00023-00038. Several months later, Med Alert commenced litigation in the

4

United States District Court for the District of New Jersey, captioned *Med Alert Ambulance Inc., v. Atlantic Health System, Inc., Atlantic Ambulance Corp., Newton Memorial Hospital, and Does 1-10,* Civil Action Number 04-1615 (JAG), (hereinafter the "Med Alert Action"). *See,* Kelly Certif., Exhibit E. Counsel for AHS and Atlantic Ambulance Corp. signed an acknowledgement of service on or about April 26, 2004. *See,* Kelly Certif. Exhibit E, DEF 0067.

In or about March 2004, AHS commenced efforts to renew the 2003-2004 Policy with National Union. AHS submitted two written applications to National Union in which AHS provided National Union with **actual notice** of the claim asserted by Med Alert. One of the applications was handwritten, and contained the following information:

> 21. Has the Applicant, any of its Subsidiaries, any of its Affiliates or any Director, Officer, or Trustee:
>
> *(a) Been involved in any antitrust, copyright or patent litigation?*
>
> $\quad\quad\quad\quad\quad$ **X Yes** ___ *No*
>
> *(b) Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state antitrust or fair trade law?* $\quad$ **X Yes** ___ *No*
>
> (c) Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state securities law or regulation? $\quad\quad$ ___Yes _X_ No

5

(d)  Been involved in any representative actions, class actions, or derivative suits?

X Yes __No

If any of the above, 21(a)-21(d) is "yes," attach full details.

AHS has periodically been a plaintiff member of a class in actions for refunds against vendors.

*Atlantic Health System and Atlantic Ambulance have been named, together with Newton Memorial Hospital, in a civil action filed by Med Alert Ambulance Co. alleging unfair trade practices + anti-trust violation with respect to the transport of cardiac patients from Newton to Morristown Memorial.*

*See,* Certification of Maria L. Zarrella, ("Zarrella Certif."), Exhibit A, DEF 0138, and Defendants' Response to Second Request for Admissions, Exhibit E, no. 4, (emphasis added).[1]

The other application is typewritten and contains equivalent actual notice of the Med Alert claim. The typewritten application states the following:

*AHS has periodically been a plaintiff member of a class in action on refunds against vendors. AHS and Atlantic Ambulance have been named, together with Newton Memorial Hospital, in a civil action filed by Med Alert Ambulance Co. alleging unfair trade practices and anti-trust violations with respect to the transport of cardiac patients from Newton to Morristown Memorial.*

---

[1] Cynthia Hoen, the Assistant General Counsel of AHS, testified that she notified National Union of the Med Alert claim by way of the disclosure she made in that hand-written renewal application.  See, Zarrella Certif., Exhibit L, Transcript from the Deposition of Cynthia Hoen, Tr: 22:9-16.

> *See,* Kelly Certif., Exhibit K, DEF 0131,
> (emphasis added).

Both renewal applications are signed by the President of AHS, but are not dated. *See,* Kelly Certif., Exhibit K, DEF 0134; and Zarrella Certif., Exhibit A, DEF 0141. It is undisputed that the broker/agent, Marsh, sent the applications on to National Union, and that National Union received the applications.[2] National Union's underwriter, Angelo Manganiello, actually received and reviewed one or both of the applications prior to the Policy's expiration date of May 1, 2004. *See,* Zarrella Certif., Exhibit E, Defendants' Response to Plaintiffs' Second Request for Admissions, No. 9 and 10; *see also,* Zarrella Certif., Exhibit C, Manganiello Tr., 59:20 to 61:20 and 67:14 to 69:7.

On or about July 23, 2004, in the ordinary course of business, AHS, through Marsh USA, Inc., ("Marsh"), delivered a copy of the Complaint in the Med Alert Action to AIG Technical Services. *See,* Kelly Certif., Exhibit F. On August 12, 2004, Natalie Louis of AIG Technical Services acknowledged receipt by National Union of the Complaint, and denied coverage under Policy Number 316-29-70, (the 2004-2005 Policy), on the grounds that the Complaint was filed prior to the inception of that

---

[2] To the extent that National Union is seeking summary judgment, there would be a material question of fact as to whether Marsh was acting as an agent of National Union.

Policy. *See,* Kelly Certif., Exhibit G. Ms. Louis did not address coverage under the 2003-2004 Policy in her August 12, 2004 letter. Id.

AHS promptly submitted a second letter (this time referencing the policy number for the 2003-2004 Policy) on or about August 17, 2004. *See,* Kelly Certif., Exhibit H. After a delay of almost **seven months**, on or about March 15, 2005, Ms. Louis sent a letter to Marsh indicating that National Union was denying coverage for the claims asserted in the Med Alert Action. *See,* Kelly Certif., Exhibit I. Ms. Louis stated:

> This suit was filed against the Insured on April 5, 2004. Pursuant to the terms of the policy, this means that the Insured was required to give National Union notice of this matter by the latest May 5, 2004, which would have been 30 days after the date the claim was made against the Insured. Because the Insured did not provide us with notice under policy number 382-77-89 until August 18, 2004, which is stated in your own letter dated September 7, 2004, the submission violates the claims made and reported provision of the policy and is thereby not covered.

> *See,* Kelly Certif., Exhibit I, DEF 0050.

Ms. Louis never reviewed or considered the actual notice AHS had given by way of the two renewal applications in

8

connection with her denial of coverage.  *See,* Zarrella Certif., Exhibit D, Tr. 146:13 to 147:21.[3]

Plaintiffs proceeded to defend the Med-Alert Action without the support or assistance of National Union and/or AIG.  On or about January 29, 2008, Plaintiffs' Offer of Judgment was accepted by Med Alert in settlement of its claims.  *See,* Zarrella Certif., Exhibits F, G & H.  Plaintiffs paid Med Alert the sum of $800,000 pursuant to the Offer of Judgment.  *See,* Zarrella Certif., Exhibit H.  Plaintiffs also incurred attorney fees and costs in the amount of $1,368,145.49 defending the claims asserted in the Med Alert Action.  *See,* Zarrella Certif., Exhibit I.

Plaintiffs commenced this action seeking a declaration that Defendants must pay for all loss incurred by Plaintiffs as a result of the Med Alert Action, including the amount paid pursuant to the Offer of Judgment, and attorney fees and expenses.  *See,* Kelly Certif., Exhibit M, p.5.  Plaintiffs also included a claim for attorney fees incurred by Plaintiffs in

---

[3] John J. Murphy, Jr., one of the plaintiffs' experts, testified in sum and substance at deposition that National Union's investigation of the claim was conducted in bad faith based, in part, upon the failure of National Union to review or consider the actual notice given in the renewal applications.  See, Zarrella Certif., Exhibit M, Transcript from the Deposition of John J. Murphy, Jr., Tr: 60:20 to 61:10; 61:22 to 63:14; and 68:5 to 69:1.

this Declaratory Judgment action.   Id.   Plaintiffs also seek compensatory damages for bad faith.   Id., p. 6.

For the reasons set forth herein, Plaintiffs are entitled to Summary Judgment on the issue of coverage.   Plaintiffs are further entitled to an award of attorney fees pursuant to New Jersey Court Rule 4:42-9(a)(6).   Finally, it is respectfully submitted that Defendants' Motion for Summary Judgment must be denied.

### LEGAL ARGUMENT

### POINT I

### SUMMARY JUDGMENT IS PROPER WHERE THERE IS NO GENUINE ISSUE AS TO A MATERIAL FACT

Federal Rule of Civil Procedure 56 provides summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); See also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

10

summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id., at 248.

In the case at bar, there is no genuine issue of material fact. Plaintiffs are entitled to coverage for the claims asserted in the Med Alert action under the 2003-2004 Policy. For the reasons set forth more fully herein, Plaintiffs' Motion for Summary Judgment should be granted on the issue of coverage.

### POINT II

**DEFENDANTS BREACHED THEIR OBLIGATION TO
PROVIDE COVERAGE TO PLAINTIFFS FOR THE CLAIMS
ASSERTED IN THE MED ALERT ACTION**

**A.    NATIONAL UNION HAD ACTUAL NOTICE OF THE CLAIM ASSERTED BY
MED ALERT DURING THE 2003-2004 POLICY PERIOD.**

"[T]he essence . . . of a claims-made policy is notice to the carrier within the policy period." Bob Works, "Excusing Nonoccurrence of Insurance Policy Conditions in Order to Avoid Disproportionate Forfeiture: Claims Made Formats as a Test Case," 5 Conn. Ins. L.J. 505, 547 (1998 /1999), (citations omitted). "[T]he event that invokes coverage under a 'claims made' policy is transmittal of notice of the claim to the insurance carrier." Zuckerman v. National Union, 100 N.J. 304, 324, (1985).

It is undisputed that National Union had **actual** notice of the claim asserted in the Med Alert Action during the 2003-2004 Policy Period.  The undisputed facts that support this statement are as follows:

1. AHS submitted a Handwritten Renewal Application to National Union. *See,* Plaintiff's Statement of Material Facts ("SOMF"), ¶28.

2. The Handwritten Application stated, "Atlantic Health System and Atlantic Ambulance have been named, together with Newton Memorial Hospital, in a civil action filed by Med Alert Ambulance Co. alleging unfair trade practices + anti-trust violation with respect to the transport of cardiac patients from Newton to Morristown Memorial." *See,* Plaintiffs' SOMF, ¶29.

3. Angelo Manganiello, an underwriter employed by National Union, received and reviewed the Handwritten Application prior to April 7, 2010. *See,* Plaintiffs' SOMF, ¶¶31-33; and Zarrella Certif., Exhibit E, Defendants' Response to Plaintiffs' Request for Admissions, no. 9.

The fact that the renewal application was received and reviewed by National Union's underwriter does **not** render the actual notice deficient.  The 2003-2004 Policy states that notice is to be given to the "Insurer."  It does **not** identify any specific department.  Moreover, the Court in Zuckerman, *supra,* 100 N.J. at 313, explained:

> The obvious advantage to the **underwriter** issuing "claims made" policies is the ability to calculate risks and premium with

12

> greater exactitude since the insurer's
> exposure ends at a fixed point, usually the
> policy termination date. (emphasis added).

In other words, the point of reporting a claim under a "claims made" policy is so that the information can ultimately be transmitted to the underwriting department and utilized by the underwriter in calculating risks and premium. See, e.g., Zarrella Certif., Exhibit N, Transcript from the Deposition of Edward Ragan, Tr: 64:23 to 65:23 (describing process observed during past employment at another carrier). This is precisely what occurred in this case.

In fact, National Union utilized this very information to exclude the Med Alert claim from coverage under the 2004-2005 Policy. The renewal application required AHS to disclose whether it was involved in anti-trust litigation. *See,* Kelly Certif., Exhibit K, DEF 0131. The application stated that any claim disclosed was excluded from the proposed coverage. Id. Plaintiffs' expert, Edward Ragan, explains:

> By requiring the renewal applicant to
> disclose claims in the renewal application,
> and lasering out coverage of those disclosed
> claims from the renewal policy, it was
> implicit under industry custom and practice
> that the disclosed claims would be triggered
> for coverage under the expiring policy and
> compartmentalized from any available
> coverage under the renewal policy.

> *See,* Zarrella Certif., Exhibit J, page 11.

13

Mr. Ragan further explains:

> In the process of NUFICO using the reporting
> of a claim in the renewal application as a
> means to contractually exclude coverage by
> lasering out such a declared claim in their
> renewal process should not have the
> dichotomy that NUFICO is taking the position
> whereby this same reporting of the same
> claim is less definite and uninformative to
> avoid adequately trigger coverage in the yet
> to be expired policy period.
>
> *See,* Zarrella Certif., Exhibit J, page 13.

Mr. Ragan's conclusion is supported by the testimony of Scott Kantrowitz of AIG. Mr. Kantrowitz testified that the purpose of disclosing claims on a renewal application is so that any claim disclosed on the application is not covered under the new policy. *See,* Zarrella Certif., Exhibit L, Tr. 122:8-25. Thus, when AHS disclosed the Med Alert claim on the Renewal Application, National Union used the information to exclude the claim from coverage under the 2004-2005 Policy. Yet, incredibly, National Union argues that its actual knowledge of this same information obtained prior to the expiration of the 2003-2004 Policy was insufficient to trigger coverage.

The record before the Court proves that National Union had **actual notice** of the Med Alert claim during the 2003-2004 Policy period. In fact, National Union's underwriter received and reviewed the information during the renewal process. In doing so, the claim was "lasered out" or excluded from coverage under

14

the 2004-2005 Policy.  It is respectfully submitted that the Med
Alert claim is covered under the 2003-2004 Policy.

## B.   AHS SATISFIED THE NOTICE REQUIREMENTS SET FORTH IN THE POLICY.

The Notice and Claim Reporting Provisions of the 2003-2004
Policy are set forth in Paragraph 7, and Endorsement No. 13.
*See,* Kelly Certif., Exhibit B, DEF 0617, 0661 and 0662.  The
Policy does not contain any other requirements concerning the
form, content or manner of notice.  *See,* Kelly Certif., Exhibit
B.

Pursuant to the plain language of the Policy, the only
"condition precedent" to coverage in the reporting requirements
is that the Insured give written notice to the Insurer of any
Claim "as soon as practicable," and (1) anytime during the
Policy Period or Discovery Period; or (2) within 30 days after
the end of the Policy provided the claim is reported no later
than 30 days after the date such claim was first made against an
Insured.  *See,* Kelly Certif., Exhibit B, DEF 0661-0662.  In the
case at bar, AHS provided National Union with written notice in
the handwritten application **during** the 2003-2004 Policy Period.
AHS thus complied with any "condition precedent" set forth in
Endorsement No. 13.

Defendants attempt to create an additional "condition
precedent" that is simply not supported by the language in the

15

2003-2004 Policy.   Defendants argue, without support, that reporting a claim to a particular address, namely 175 Water Street, New York, New York, is a condition precedent to coverage.   *See,* Defendants' brief, page 28.   There is nothing in the 2003-2004 Policy that makes reporting the claim to a particular address a "condition precedent" to coverage.   To the contrary, National Union only used the term "condition precedent" in the context of the "timing" of the notice.   If National Union intended to make reporting a claim to a particular address a "condition precedent" to coverage, National Union was required to state that in the policy.

The Court considered a similar set of facts in The Putney School v. Schaaf, 157 Vt. 396, 599 A.2d 322 (Vt. Supreme 1991). There, the Putney School purchased a claims made policy from CNA.   The policy required notice of a claim to be sent to CNA at its Chicago address.   Id. 599 A.2d at 326.   The insured sent notice to Brewer & Lord, the insurance broker, which the Court found to be an agent of CNA for purposes of receiving notice. Id. 599 A.2d at 325.[4]   The Court rejected CNA's argument that coverage was not afforded because notice was not sent in accordance with the express direction that it be sent to the

---

[4] The Court found that the insurance broker acted as an agent for both parties at the notice-of-claim stage, much the way Marsh did in the case at bar.   Id. 599 A.2d at 326.

Chicago address.   The Court explained, "[l]ateness of notice may affect the risk, but here notice was delivered to Brewer & Lord in a timely manner."   Id. 599 A.2d at 326.   The Court further noted that in order for the insured to appreciate the requirement that notice must be sent to CNA in Chicago or its coverage would evaporate, it would have to read paragraph VII(e), then refer to Item G in the declarations.   The Court concluded that this "labyrinth" of obscurely written clauses did not reasonably apprise the insured of the fact that notice to Brewer & Lord would be deemed insufficient.   Id. 599 A.2d at 326.

In the case at bar, it is undisputed that actual notice of the Med Alert claim was received by National Union during the 2003 to 2004 Policy Period, in or about March 2004.   By letter dated April 7, 2004 (still well within the 2003 to 2004 Policy Period), National Union underwriter Angelo Manganiello sent a letter to Marsh in which he acknowledged his receipt and review of the subject renewal application (identified in the letter as the "AIG 8/97 NFP Renewal Application"), requested a dated original of the document, and requested "confirmation of how claims are reported to in house counsel" as part of his underwriting investigation toward issuance of the renewal policy.   See, Zarrella Certif., Exhibit B.   Defendants admit

17

they received the notice, but argue that notice to Mr. Manganiello is insufficient simply because it was not sent to the 175 Water Street address. However, the 175 Water Street address is not listed in paragraph 7 or either version of Endorsement Number 13. As explained by the Court in the <u>Putney School</u> case, National Union's Policy contained a "labyrinth" of clauses which fail to reasonably apprise the insured that coverage would evaporate if notice of a claim is sent to National Union at a different address.

It is respectfully submitted that the renewal application provided National Union with actual written notice of the Med Alert claim. It is undisputed that the handwritten application was received by National Union during the Policy Period. Therefore, AHS complied with the requirements for coverage set forth in the Policy.

## C. THE APPLICATIONS SATISFIED THE NOTICE PROVISION IN THE POLICY, WHERE, AS HERE THEY PROVIDED THE INSURER WITH ACTUAL NOTICE OF THE CLAIM.

As explained more fully in the preceding section, there is nothing in the 2003-2004 Policy that requires notice of a claim to be sent to the claims department. Furthermore, the 2003-2004 Policy contains no guidance on the form or content of the notice. Accordingly, the information in the renewal application satisfies the notice provisions in the 2003-2004 Policy.

18

Defendants erroneously argue that "AHS could not use a policy application to report a claim." *See*, Defendants' brief, page 19.   In support of this argument, Defendants rely principally on a "constructive notice" case, American Cas. Co. of Reading, PA v. Continisio, 819 F. Supp. 385 (D.N.J. 1993), aff'd, 17 F.3d 62 (3d Cir. 1994), ("Continisio").   Defendants attempt to portray the District Court's opinion as controlling even though the Third Circuit issued an opinion discussing the specific argument relied on by the Defendants.   Defendants' reasons for doing so are clear: the Third Circuit's decision does not support Defendants' meritless position.

A brief recitation of Continisio's facts is in order. There, First Federal, a bank, purchased a "claims-made" directors and officers (D&O) liability policy written by the plaintiff's predecessor, effective June 26, 1981 to June 26, 1984 (the 1981 policy).   17 F.3d at 63.   The 1981 policy provided coverage for

> loss in respect of any Wrongful Act committed prior to the termination of this policy arising from any claim made (i) within the policy period or (ii) within the discovery period if the right is exercised…in accordance with Clause 2(B)….Any claim made subsequent to the policy period as to which notice was given to the insurer within the policy period…shall be treated as a claim made during the policy period. Id.

19

The insured was required to provide a written notice of its claim to invoke its rights under the policy. Id. At 64. The policy language required the notice to be sent to the "Manager of Professional Liability Claims." Id. at 64.

As the expiration of the 1981 policy approached, First Federal completed a renewal application and attached copies of its most recent reports to the Federal Home Loan Bank Board ("FHLBB Reports") and the most recent auditor's report. The renewal application **denied** knowledge of potential claims, defeating any claim that the document gave actual notice. Id. at 64, 69. Certain financial reports, however, contained troubling information about First Federal's financial condition. Id. at 64, 69.

Eventually, First Federal failed. In **1991**, more than six years after the renewal application, the Federal Deposit Insurance Corporation ("FDIC") brought an action against First Federal's former directors and officers alleging negligence and breach of fiduciary duty. Id. at 64. The FDIC sought to trigger coverage under the **1981 policy** claiming that the attachments to the renewal application gave the insurer **constructive notice** of a potential claim. Id. at 69.

In contrast to the case at bar, the insurance policy at issue in Continisio contained language that **required** claims and

20

inquiries related to the policy to be directed to the claims department at "Manager, Professional Liability Claims." Id. at 68. As such, the Court found that the insured was required to provide actual notice of any potential claim to the insurer's claims liability department. Id. at 69. Furthermore, the Continisio Court was particularly troubled by the fact that the renewal application denied notice of potential claims. Id., at 68-69. The Court was concerned about a situation "where the bank directors and officers would be better served to **disguise** potential claims so that they would be covered by insurance well into the future, while not drawing attention to conduct that might increase future premiums, or terminate coverage altogether." Id. at 68 (emphasis added). Accordingly, the Court held that the

> "[i]nsureds may not **deny knowledge of potential claims** in their renewal application and rely on information submitted with the same application to support an argument that the insurer should have known a claim could be made."
> Id. at 69 (emphasis added).

In doing so, the Court cited to a long line of cases where the insureds denied knowledge of a potential claim in an application, but argued that certain information submitted with the application provided constructive notice of a potential claim:

21

*See*, *e.g.*, *FDIC v. St. Paul Fire & Marine Ins. Co., 993 F.2d [155,] 159-60* [(8th Cir. 1993)]("The bank . . . **answered negatively to specific questions** concerning bank officers and directors' knowledge of errors or omissions which might give rise to a claim. . . . Notice that would cause one to investigate a renewal for insurance must surely be different than notice to investigate potential claims under a 'claims made' policy."); *American Cas. Co. v. FDIC, 944 F.2d at 460* (holding that a renewal application in which bank officers **claimed the bank was in no danger** while predicting a $ 400,000 loss and reporting a cease-and-desist order was ineffective notice of potential claims); *California Union Ins. Co. v. American Diversified Sav. Bank, 914 F.2d 1271, 1278 (9th Cir. 1990)* (finding that **general financial documents did not constitute constructive notice** of a claim when "the principal documents relied upon would not have alerted [the insurer] to anything [the insured] considered to be a potential claim"), *cert. denied, 498 U.S. 1088 (1991)*; *American Cas. Co. v. RTC, 1993 U.S. Dist. LEXIS 19298*, (D. Md. Nov. 1, 1993) (finding no notice when the insureds' **renewal application claimed compliance** with an agreement under which the FHLBB would forbear from bringing claims); *American Cas. Co. v. FDIC, 821 F. Supp. at 663-64* (refusing to rewrite a claims-made policy into an occurrence policy because general information in a renewal application cannot overcome insureds' denials of potential claims); *FDIC v. Continental Cas. Co., 796 F. Supp. at 1351-54* (finding that a renewal application reporting general financial troubles and a FDIC cease-and-desist order was ineffective notice when **insureds stated they were unaware of any occurrence that could subsequently give rise to a claim** and the documents were not designed to give notice of a potential claim); *cf. National Union Fire Ins. Co. v. Baker & McKenzie, 997*

> *F.2d at 309* (holding that an insurer was not required to collate documents from different sources notifying it of the same claim by other insureds under other policies and conclude a claim might be made in the future). Id. at 69 (emphasis added).

The case at bar is not only distinguishable, but also inapposite from Continisio. Most importantly, the sufficiency of "notice" discussed in Continisio dealt with only **constructive** notice. Id. at 67. In fact, the Third Circuit analyzed the entire notice argument under the heading "**Constructive Notice of Claim.**" Id. (emphasis in original). *See*, FDIC v. Interdonato, 988 F. Supp. 1, 7 (D.D.C. 1997), aff'd, 172 F.3d 919 (D.C. Cir. 1998), ("actual notice" provided by the insured was in sharp contrast to the constructive notice relied upon by the insureds in many of the cases cited by the insurance carrier). Here, National Union had **actual** notice of the Med Alert claim based upon AHS's disclosure in its renewal application that AHS was named as a defendant in an action filed by Med Alert alleging anti-trust claims. National Union is taking the position that while the notice was sufficient to **exclude** the claim from the 2004-2005 policy period, it was some how insufficient to **include** the claim within the prior policy period.

Moreover, unlike the insured in Continisio and the other cases cited by the Third Circuit, AHS answered "YES" to the questions on both applications asking for disclosure of anti-

trust litigation.   *See*, Zarrella Certif., Exhibit A, DEF 0138; Kelly Certif., Exhibit K, DEF 0131.   AHS did not attempt to "disguise" the claims.   To the contrary, AHS **affirmatively acknowledged** in both applications that there was litigation involving anti-trust claims and provided specific information, including the name of the Plaintiff, Med Alert, and co-defendant, Newton Hospital.   AHS also disclosed the fact that Med Alert alleged unfair trade practices and violations of anti-trust statutes.   *See,* Zarrella Certif., Exhibit A, DEF 0138; Kelly Certif., Exhibit K, DEF 0131.   AHS, thus, was not only subjectively aware of the potential claim, but actually notified National Union of the claim within the time limits prescribed by the 2003-2004 Policy.   Because the renewal application provided actual notice of the Med Alert claim, National Union was not required to sift through general information attached to the application to determine that a claim existed.   Rather, the claim was set forth sufficiently for National Union to exclude it from coverage in the upcoming policy period.

Furthermore, the policy language in Continisio required that "all claims or inquiries relating to the Policy should be directed to Manager, Professional Liability Claims, Continental Casualty at the above address."   Id. at 68.   Here, the policy language did not require the notice to be sent to the claims

department. In fact, in issuing the 2003-2004 Policy, National Union deleted the reference to the claims department that appeared in the previous policy. (Compare Kelly Certif., Exhibit A, DEF 0555 with Exhibit B, DEF 0617). Furthermore, the policy does not dictate the form and substance of the notice to be delivered to National Union. Accordingly, when AHS sent the notice (regardless of the format) of the potential claim to National Union as required under the Policy, it was in full compliance with its obligations.

Defendants' reliance on LaForge v. The Am.Cas.Co. of Reading, Pennsylvania, 37 F.3d 580 (10th Cir. 1994) is also misplaced. As in other "constructive notice" cases, the insured in LaForge submitted an application in which it denied knowledge of "any possible violation of laws or regulations." Id., at 584. In fact, the Court found that the application "played down" any problems both generally and with respect to the two loans that eventually became the subject of litigation. Id. In the case at bar, AHS affirmatively stated that it was engaged in anti-trust litigation. This is in sharp contrast to the information disclosed by the insured in LaForge. See, Id., (recognizing that an application may satisfy the notice requirements of a claims made policy where there is "an

25

unmistakably clear, unequivocal and conspicuous statement of a claim.")[5]

Defendants' attempt to introduce extrinsic evidence to alter the requirements of the Policy is improper.  This is especially so in light of National Union's insistence that the policy language is unambiguous.  In fact, New Jersey courts consistently recognize that insurance policies are contracts of adhesion and are subject to special rules of interpretation. Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990); Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 611 (1986).  To avoid "subjecting insureds 'to technical encumbrances or to hidden pitfalls…policies should be construed liberally in the insured's favor to the end that coverage is afforded to the fullest extent that any fair interpretation will allow.'"  Royal Ins. Co. v. KSI Trading Corp., 563 F.3d 68, 74 (3d Cir. 2009) (quoting Meier, supra, 101 N.J. at 611) (emphasis added).

If, however, there are ambiguities in the language of the policy requiring the use of extrinsic evidence, then such ambiguities must be resolved in favor of the insured.  Cobra Prods Inc. v. Fed. Ins. Co., 317 N.J. Super. 392, 400 (App.Div.1998), certif. denied 160 N.J. 89 (1999).  If the language in the insurance policy is capable of different

---

[5] This language appears immediately after the language quoted by the Defendants in their brief, at page 23.

interpretations, courts must apply the interpretation that sustains coverage and reject the interpretation under which the injured person would be left without protection. Seidenberg v. The Mutual Life Insurance Company of New York, 949 F. Supp. 269, 275 (D. N.J. 1996); County of Hudson v. Selective Ins. Co., 332 N.J. Super. 107 (App. Div. 2000). At times, even an unambiguous contract has been interpreted contrary to its plain meaning so as to fulfill the reasonable expectations of the insured. Nav-Its, Inc. v. Selective Ins. Co. of America, 183 N.J. 110, 118-19 (2005) (citations omitted) (emphasis added).

In this case, defendants engage in all sorts of mental gymnastics to attempt to justify their refusal to provide coverage under the insurance policy AHS purchased. The Policy itself failed to prescribe the form of notice to be delivered to National Union; therefore, it is irrelevant how AHS notified National Union of claims or potential claims at some other time. Defendants rely on a self-serving interpretation of proper notice not countenanced under New Jersey law. Simply put, this case undeniably presents the kind of situation Judge Baime identified in Owens-Illinois, Inc. v. United Ins. Co., 264 N. J. Super. 460, 491 (App.Div.1993) cited in Lehrhoff v. Aetna Casualty and Surety Company, 271 N.J. Super. 340, 347 (App.Div.

1994) as the insurance industry's "unholy mantra" of "we collect premiums; we do not pay claims."

It is respectfully submitted that the actual notice of the Med Alert claim set forth in the renewal application satisfied the requirements of the Policy.  The claims asserted in the Med Alert Action are therefore covered under the 2003-2004 Policy.

**D.  <u>NATIONAL  UNION  WAIVED  ITS  RIGHT  TO  ARGUE  THAT  THE INFORMATION IN THE RENEWAL APPLICATION DOES NOT COMPLY WITH THE NOTICE REQUIREMENTS OF THE POLICY</u>.**

If notice provided to an insurer is considered by the insurer to be defective, good faith requires the insurer to notify the insured of its objections within a reasonable time, and if the insurer fails to do so or proceeds to act as though notice was satisfactory, it has waived any right to assert notice as a defense at a later date.  <u>Federal Savings and Loan Insurance Corporation v. Burdette</u>, 718 F. Supp. 649, 653 (E.D. Tenn. 1989); <u>FDIC v. Interdonato</u>, 988 F. Supp. 1, 10 (D.D.C. 1997), (Where Virginia Surety had actual notice of possible director and officer liability, its failure to properly respond to these asserted notices constitutes a waiver of any arguments relating to deficiencies in notice); <u>JP Morgan Chase &Co. v. The Travelers Indemnity Company</u>, 22 Misc. 3d 1111A (New York 2009), (Twin City did not object to the notice's content, quality, purported lack of specificity or otherwise give any indication that required information was missing until legal action was

28

commenced.   Thus, Twin City waived any defense that the insured failed to satisfy a condition precedent to coverage).

It is undisputed that National Union's underwriter, Angelo Manganiello, received and reviewed the Handwritten Application during the 2003 to 2004 Policy period.   *See,* Zarrella Certif., Exhibit E, Defendants' Response to Plaintiffs' Request for Admissions, no. 9.   Plaintiffs' expert, Edward Ragan opined that in the relevant time period, industry custom and practice envisioned that a claim could be reported to the underwriting department where the subject insurance policy contained no requirement that a claim be reported to the "claim department" or a specific person.   *See,* Zarrella Certif., Exhibit J, p. 12. Indeed, this conclusion is consistent with the opinion of the New Jersey Supreme Court in Zuckerman, *supra,* 100 N.J. at 313 ("the obvious advantage to the underwriter issuing 'claims made' policies is the ability to calculate risks and premiums with greater exactitude.")

In the case at bar, National Union's underwriter received and reviewed the renewal application during the 2003-2004 Policy Period.   After National Union received notice of the claim, Mr. Manganiello communicated with the claims department and performed a "claim check" in connection with the renewal application.   *See,* Plaintiffs' SOMF, ¶35; Zarrella Certif.,

29

Exhibit C, Tr. 29:5-22 and 34:36-15.   Mr. Manganiello could not recall communicating with anyone in the claim department about the information in the application.   *See,* Plaintiffs' SOMF, ¶34; Zarrella Certif., Exhibit C, Tr. 75:5-23.   Furthermore, there is no evidence in the record to indicate that National Union advised AHS of any objection to the actual notice set forth in the renewal application.

Once the Med Alert claim was disclosed on the renewal application, it was **excluded** from coverage under the 2004-2005 Policy.   *See,* Zarrella Certif., Exhibit J, pages 11 and 13.   In fact, the renewal application stated that any claim disclosed in the application would be excluded from the 2004-2005 Policy. *See,* Kelly Certif., Exhibit K, DEF 0131.   National Union ostensibly takes the position that this very disclosure was insufficient to comply with the notice requirements of the 2003-2004 Policy.   Once the claim was disclosed to National Union, it had a good faith obligation to advise Plaintiffs of any objection with respect to the notice given.   Having failed to do so, National Union has waived any objection to the notice given.

National Union had actual notice of the Med Alert claim during the 2003-2004 Policy Period.   For the reasons set forth herein, it is respectfully submitted that Plaintiffs are entitled to coverage under the National Union Policy for the

30

claims asserted in the Med Alert Action.  The Court should thus grant Plaintiffs' Motion for Summary Judgment on this issue.

## POINT III

### THE MATTER SHOULD BE SET DOWN FOR A HEARING ON THE REASONABLENESS OF THE OFFER OF JUDGMENT AND ATTORNEY FEES INCURRED DEFENDING THE MED ALERT ACTION.

"Where an insurer wrongfully refuses coverage and a defense to its insured, so that the insured is obligated to defend himself in an action later held to be covered by the policy, the insurer is liable for the amount of the judgment obtained against the insured or of the settlement made by him." Griggs v. Bertram, 88 N.J. 347, 364 (1982), *quoting,* N.J. Mfgrs. Ind. Ins. Co. v. United States Cas. Co., 91 N.J. Super 404, 407-408 (App.Div. 1966).  The only qualifications to this rule are that the amount paid in settlement must be reasonable and that the payment be made in good faith.  Id.  The insured must make a *prima facie* showing that the settlement was reasonable and untainted by bad faith.  Id., at 366-367. The insurer bears the ultimate burden of demonstrating by a preponderance of the evidence, that it is not liable because the settlement is neither reasonable nor reached in good faith.  Id., at 366-367.

In the case at bar, Med Alert filed a Complaint in federal court alleging unfair trade practices and violation of anti-trust statutes.  *See,* Kelly Certif., Exhibit E.  AHS and

31

Atlantic Ambulance made an Offer of Judgment pursuant to Fed.R.Civ.P. 68, in the amount of $800,000. *See,* Zarrella Certif., Exhibit F. Med Alert accepted the Offer of Judgment. *See,* Zarrella Certif., Exhibit G. The Court entered judgment in favor of Med Alert pursuant to the Offer of Judgment. *See,* Zarrella Certif., Exhibit H. Defendants are bound by the amount paid pursuant to the Offer of Judgment unless the Court finds the settlement was unreasonable or entered into in bad faith. The matter should thus be set down for a plenary hearing to determine the reasonableness and good faith of the settlement. Jefferson Ins. Co. v. Health Care Ins. Exchange, 247 N.J. Super 241, 248 (App.Div. 1991), (remanding the matter to the trial court for a plenary hearing.

Furthermore, Plaintiffs incurred attorney fees defending the Med Alert Action in the sum of $1,368,145.49. *See,* Zarrella Certif., Exhibit I, no. 12. Pursuant to Local Civil Rule 54.2, Plaintiffs are permitted to file affidavits with the Court within thirty days of the entry of judgment with respect to the nature of services, description of services, time spent, and billing rates. Plaintiffs respectfully request that the Court set the matter down for the submission of affidavits and/or a plenary hearing on the reasonableness of attorney fees.

32

## POINT IV

### PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEY FEES PURSUANT TO NEW JERSEY COURT RULE 4:42-9

Rule 4:42-9(a)(6) of the New Jersey Court Rules permits the court to allow counsel fees "in an action upon a liability or indemnity policy of insurance in favor of a successful claimant." The policy underlying the rule is "to discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract." See, Pressler, Current New Jersey Court Rules, ("Pressler") Comment to R. 4:42-9(a)(6), citing Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 572 (1970). The theory is that "one covered by a policy is entitled to the full protection provided by the coverage, and that benefit should not be diluted by the insured's need to pay counsel fees in order to secure its right under the policy." Iafelice v. Arpino, 319 N.J. Super. 581, 590 (App. Div. 1999); Liberty Village v. West American Ins., 308 N.J. Super. 393, 406 (App. Div.), certif. denied, 154 N.J. 609 (1998). "Indeed, it would be self-defeating if [a claimant] had to incur substantial legal fees to recover money to which she is entitled, without any possibility of being compensated for all or part of those fees." Russell v. Rutgers Casualty Ins. Co., 234 N.J. Super. 175, 182 (App. Div. 1989). Accordingly, such costs and counsel fees include not only those incurred by the insured in providing

33

for his own defense, but also those incurred by the claimant in bringing the action on the policy for coverage. *See*, Pressler, supra, Comment to R.4:42-9(a)(6).

The trial judge has broad discretion as to whether to order counsel fees in a particular case. Iafelice, 319 N.J. Super. at 590 (affirming an award of $15,817.40 for insureds and $1,785 for the underlying plaintiff); *see also*, Liberty Village, 308 N.J. Super. at 406 (trial court's denial of counsel fees to insured in action on liability policy, without statement of findings and/or reasons, was reversible error). Since equitable principles govern the trial court's decision, the court should consider the totality of the circumstances in awarding counsel fees. Id., at 591. An insured is not required to show bad faith or arbitrary action by an insurer in order to recover its fees. Liberty Village, 308 N.J. Super. at 406.

The New Jersey District Court may award attorney fees in favor of a successful claimant under R. 4:42-9(a)(6), where federal jurisdiction is based on diversity. Baughman v. United States Liability Insurance Company, 2010 U.S.Dist. LEXIS 69641, (D.N.J. 2010) slip op. at 10, FN 4, ("State rules concerning the award or denial of attorneys' fees are to be applied in cases where federal jurisdiction is based on diversity.") In the case at bar, Plaintiffs filed their Complaint in New Jersey Superior

34

Court.  Defendants removed the action to federal court on the basis of diversity.  Accordingly, it is proper for the District Court to apply R. 4:42-9(a)(6) in this case.

Plaintiffs respectfully submit that in the event they prevail on the claims against National Union in this action, the Court should grant partial summary judgment on the claim for attorney fees under R. 4:42-9(a)(6).  Pursuant to Local Civil Rule 54.2, Plaintiffs request that the Court set the matter down for the submission of affidavits and/or a plenary hearing on the issue of attorney fees.

## POINT V

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST BE DENIED

"In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences—including issues of credibility—in favor of the nonmoving party." Newsome v. Administrative Office of the Courts, 103 F. Supp.2d 807, 815 (D.N.J. 2000), *citing,* Watts v. University of Delaware, 622 F.2d 47, 50 (3d Cir. 1980).  It is inappropriate for a district court to resolve factual disputes or make credibility determinations at the summary judgment stage.  Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).  It is respectfully submitted that

35

when the Court considers Defendants' Motion in a light most favorable to the Plaintiffs, genuine issues of material fact exist which preclude summary judgment.

A. **AT A MINIMUM, GENUINE ISSUES OF FACT EXIST AS TO WHETHER ACTUAL NOTICE SET FORTH IN THE APPLICATION SATISFIES THE REQUIREMENTS OF THE POLICY**.

Alternatively, at a minimum, there is a genuine issue of fact as to whether actual notice of the claim set forth in the renewal application satisfies the notice requirements of the policy. Accordingly, Defendants' motion for summary judgment must be denied.

In CSR Limited v. CIGNA Corporation, 2006 U.S. Dist. LEXIS 8149 (D.N.J. 2006), the Court held that material issues of fact existed as to whether plaintiffs breached the notice provisions contained in certain insurance policies. There, the plaintiff, CSR Limited ("CSR") brought a declaratory judgment action seeking coverage under various insurance policies for asbestos-related claims. The various policies contained some form of notice provision, requiring notice to be given in writing to the insurer.[6] CSR argued that it complied with the notice provision

---

[6] The policies in CSR were "occurrence" policies, which required the insurer to show both a breach of the notice provision and a likelihood of appreciable prejudice. Id., at 44-45. The Court held that *before* reaching the prejudice question, the insurer had to prove a breach of the applicable notice provisions. Id. The Court engaged in a thorough analysis of the "notice" issue which is relevant here.

"by the formal notice in November 1991 and by providing other forms of notice well prior to 1991, such as the provision of annual reports and on the basis of less formal communications between CSR and Defendants." Id., slip op. at 56. Defendants argued that the annual reports were insufficient, and that "the reports were not intended to serve as notice to Defendants of the asbestos-related claims." Id.

Judge Ackerman held that genuine issues of material fact precluded summary judgment in favor of Defendants on late notice. Id., at 58. The Court stated:

> Under all of the policies, determination of whether Plaintiffs breached the notice provisions requires an inquiry into the reasonableness of the formal notice of the United States asbestos-related claims provided by CSR in November 1991 and the varying forms of allegedly "non-traditional" notice provided prior to 1991 by Plaintiffs and others. [Id., slip op at 55.]

The Court thus denied summary judgment in light of material issues of fact concerning "the type of notice, time of notice, and reasonableness of notice provided by Plaintiffs." Id.

In the case at bar, National Union's motion, at best, raises genuine issues of material fact regarding whether the information actually received by National Union in the Renewal Application satisfies the notice provisions of the Policy. The issue before the Court centers on whether the terms of the Policy were satisfied. Indeed, a review of the expert reports

demonstrates the fact that National Union is not entitled to summary judgment as a matter of law.

In that regard, Defendants have submitted an expert report from Thomas Newman who offers opinions on whether Plaintiffs complied with the notice provisions in the National Union Policy.  *See,* Kelly Certif., Exhibit L.  The opinions offered by Defendants' expert conflict with the opinions offered by Plaintiffs' experts.  *See,* Zarrella Certif., Exhibits J and K. Edward Ragan in his report concludes that the information which AHS presented to National Union in the renewal application satisfied the claim reporting obligation under the Policy.  *See,* Zarrella Certif., Exhibit J, p. 12.  Mr. Ragan further concludes that coverage for the Med Alert claim was triggered under the 2003-2004 Policy.  *See*, Zarrella Certif., Exhibit J, p. 10. John Murphy also concludes that National Union was actually notified of the Med Alert claim within the policy period May 1, 2003 to May 1, 2004.  *See,* Zarrella Certif., Exhibit K, p. 11. Mr. Murphy opines that the information contained in the renewal application was sufficient to constitute notification of a claim.  Id. Mr. Murphy further opines that National Union failed to properly and timely perform a complete coverage investigation, which constitutes a breach of its duty of good

38

faith and fair dealing.   *See,* Zarrella Certif., Exhibit K, p. 12.

When the facts are viewed in a light most favorable to Plaintiffs, National Union's motion raises genuine issues of material fact as to whether the information transmitted in the renewal application satisfied the terms of the Policy.  National Union's Motion for Summary Judgment must therefore be denied.

## B. AIG'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED

AIG moves for summary judgment on the grounds that it "had no obligation to the Plaintiffs." *See,* Defendants' brief, Point V.   AIG argues that "mere ownership" of a subsidiary does not justify the imposition of liability.   Id.   However, there are genuine issues of material fact as to the relationship between National Union and AIG that preclude summary judgment at this time.

Initially it should be noted that the handwritten and typed applications identify "American International Companies" as the "Insurer."   *See,* Kelly Certif., Exhibit K, DEF 0126; Zarrella Certif., Exhibit A, DEF 0135.   Furthermore, in their summary judgment motion, Defendants argue that the Policy identified the address of the "Insurer" as 175 Water Street.   The record before this court proves that the 175 Water Street address is actually an AIG address.   *See,* Kelly Certif., Exhibit G and I.

Defendants' argument that AIG had no duty to Plaintiffs is not supported by the record. The policy identified AIG's address as that of the "Insurer."

Furthermore, the decision to deny coverage was actually made by Natalie Louis, an AIG employee. *See,* Kelly Certif., Exhibit K, DEF 0126; Zarrella Certif., Exhibit A, DEF 0135. Ms. Louis testified that she was employed by AIG. *See,* Zarrella Certif., Exhibit D, Tr. 13:16-19. Furthermore, Ms. Louis wrote the coverage denial letters on AIG letterhead. Id. The record before this Court raises genuine issues of fact with respect to the involvement of AIG in the application process, claims process, and denial of coverage with respect to the Med Alert claim. Accordingly, AIG is not entitled to summary judgment.

**CONCLUSION**

Based upon the foregoing, Plaintiffs respectfully request that the Court deny Defendants' Motion for Summary Judgment and grant Plaintiff's Cross Motion for Summary Judgment, and that the matter be set down for a hearing on damages.

> Respectfully submitted,
> BUBB, GROGAN & COCCA, LLP
> Attorneys for Plaintiffs
>
>
> By:     /s/Michael S. Bubb
>         Michael S. Bubb

Dated:   December 6, 2010

40

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC HEALTH SYSTEM, INC., AHS HOSPITAL CORP., and ATLANTIC AMBULANCE CORP., <br><br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a member company of American International Group and AMERICAN INTERNATIONAL GROUP, individually, <br><br><br> Defendants. | : Civil Action No. 2:08-cv-01661 <br> : (JAG) <br> : <br> : <br> : <br> : <br> :       **CERTIFICATION OF** <br> :    **MARIA L. ZARRELLA. ESQ.,** <br> :   **IN OPPOSITION TO DEFENDANTS'** <br> : **MOTION FOR SUMMARY JUDGMENT AND** <br> : **IN SUPPORT OF PLAINTIFFS' CROSS-** <br> :     **MOTION FOR SUMMARY JUDGMENT** <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

MARIA L. ZARRELLA, ESQ., of full age, hereby certifies and says:

1.    I am an attorney-at-law of the State of New Jersey associated with the law firm of Bubb Grogan & Cocca, LLP, attorneys for Plaintiffs Atlantic Health System, Inc., AHS Hospital Corp., and Atlantic Ambulance Corp. (collectively "Plaintiffs").

2.    I make this Certification upon personal knowledge and in opposition to the Motion for Summary Judgment filed by Defendants National Union Fire Insurance Company of

Pittsburgh, PA, and American International Group, (collectively "Defendants").

3. Attached hereto as **Exhibit A** is a true and correct copy of American International Companies' Application Form for Not-For-Profit Individual and Organization Insurance, which contains handwritten responses on behalf of Atlantic Health System, Inc. (the "Handwritten Application). The document was produced by Defendants during the course of discovery and bears bates stamp DEF 0135 to DEF 0141.

4. Attached hereto as **Exhibit B** is a true and correct copy of the letter from Angelo Manganiello, underwriter for National Union Fire Insurance Company of Pittsburgh Pa, ("National Union") to Paul Bernabeu of Marsh & McLennan Inc., dated April 7, 2004, acknowledging receipt and review of AIG 8/97 Renewal Application.

5. Attached hereto as **Exhibit C** is a true and correct copy of the deposition transcript of Angelo Manganiello of National Union Fire Insurance Company of Pittsburgh, PA, dated June 9, 2009.

6. Attached hereto as **Exhibit D** is a true and correct copy of the deposition transcript of Natalie Louis of AIG, dated June 3, 2009.

7.   Attached  hereto  as  **Exhibit E** is  a  true  and correct  copy  of  Defendants' Response  to  Plaintiffs' Second Request for Admissions dated January 13, 2010.

8.   Attached  hereto  as  **Exhibit F** is  a  true  and correct  copy  of  the  Offer  of  Judgment  dated  January  14, 2008, in the matter captioned Med Alert Ambulance, Inc. v. Atlantic Health System, Inc., et al., Docket No. 04CV1615, ("Med Alert Action").

9.   Attached  hereto  as  **Exhibit G** is  a  true  and correct  copy  of  the  Notice  of  Acceptance  of  Offer  of Judgment dated January 29, 2008, in the Med Alert Action.

10.   Attached  hereto  as  **Exhibit H** is  a  true  and correct  copy  of  the  Order  to  Clerk  to  Enter  Judgment  on  the Complaint  Pursuant  to  Acceptance  of  Rule  68  Offer;  Entry  of Judgment dated April 23, 2008.

11.   Attached  hereto  as  **Exhibit I** is  a  true  and correct  copy  of  Plaintiffs' Response  to  Defendants' Interrogatories, dated April 22, 2010, and Rider A.

12.   Attached  hereto  as  **Exhibit J** is  a  true  and correct  copy  of  the  expert  report  of  Edward  Ragan,  dated February 4, 2010.

13.   Attached  hereto  as  **Exhibit K** is  a  true  and correct  copy  of  the  expert  report  of  John  J.  Murphy,  Jr., dated January 29, 2010.

14. Attached hereto as **Exhibit L** is a true and correct copy of the deposition transcript of Cynthia Hoen, dated November 23, 2009.

15. Attached hereto as **Exhibit M** is a true and correct copy of the deposition transcript of John J. Murphy, Jr., dated October 15, 2010.

16. Attached hereto as **Exhibit N** is a true and correct copy of the deposition transcript of Edward Ragan, dated October 12, 2010.

I hereby certify the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Maria L. Zarrella

Dated:     December 6, 2010