**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| ATLANTIC HEALTH SYSTEM, INC., AHS HOSPITAL CORP., and ATLANTIC AMBULANCE CORP., | ) ) ) ) | Hon. Garrett E. Brown, Jr. |
| Plaintiffs, | ) ) | Civil Action No. 08-1661 (GEB) |
| v. | ) ) | **MEMORANDUM OPINION** |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a member company of American International Group and AMERICAN INTERNATIONAL GROUP, individually, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

**BROWN, Chief Judge:**

This matter[1] comes before the Court on the cross motions for summary judgment (Doc. Nos. 65, 72) filed by Plaintiffs Atlantic Health Systems, Inc., AHS Hospital Corp., and Atlantic Ambulance Corp. (collectively "AHS") and Defendants National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and American International Group (AIG).  This Court has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the following reasons, this Court will deny AHS's motion and grant Defendants' motion.

---

[1]This matter was reassigned to the undersigned by Order of March 15, 2010.

1

## I.     BACKGROUND

This dispute concerns whether AHS is entitled to coverage under a claims-made insurance policy (Policy No. 382-77-89, hereinafter the "2003–2004 Policy") issued by National Union that was in effect from May 1, 2003 to May 1, 2004.  The relevant facts are not disputed.

In or about February 2004, AHS's general counsel received a letter from an attorney enclosing a draft complaint by Med Alert Ambulance, Inc. (hereinafter "Med Alert"), alleging that AHS had committed antitrust violations.  Med Alert filed suit in this District on April 5, 2004.  *Med Alert Ambulance, Inc. v. Atlantic Health System*, Civ. No. 04-1615 (hereinafter "Med Alert action").  Following the filing of the Med Alert action, AHS sought indemnification under its National Union claims-made insurance policy.  On or about July 23, 2004, AHS sent a letter bearing the description "First Notice of Loss" to AIG Technical Services requesting coverage under a subsequent claims-made insurance policy (Policy No. 316-29-70, effective from May 1, 2004 to May 1, 2005, hereinafter the "2004–2005 Policy"), but the claim was denied for falling outside the coverage period for that policy.  (*See* Defs.' 56.1 Statement ¶¶ 1–3, 5–6; Kelly Certif. Exs. B, D, F; Pls.' 56.1 Resp. ¶¶ 1–3, 5–6.)  On or about August 17, 2004, AHS sent a second letter to AIG indicating that it was a "First Report of a new loss" and requesting coverage for the Med Alert action under the 2003–2004 Policy.  (*See* Defs.' 56.1 Statement ¶ 7; Kelly Certif. Ex. H; Pls.' 56.1 Resp. ¶ 7.)  That claim was denied by letter dated March 15, 2005, because the notice of claim was not reported during the 2003–2004 Policy period, or within the policy's 30-day notice period.  (*See* Defs.' 56.1 Statement ¶ 8; Kelly Certif. Ex. I; Pls.' 56.1 Resp. ¶ 8.)  The denial letter stated that the Med Alert action was filed on April 5, 2004, and pursuant to the terms of the 2003–2004 Policy, AHS was required to provide written notice of the matter by

2

May 5, 2004.  (Kelly Certif. Ex. I.)

During the 2003–2004 Policy period, AHS submitted documents to National Union in connection with the renewal of AHS's insurance policy including one or more renewal applications.  (*See* Defs.' 56.1 Statement ¶ 10; Kelly Certif. Ex. K; Pls.' 56.1 Resp. ¶ 10.)  The renewal application includes the following questions and disclosures:

> 27. Has the Applicant or any of its Subsidiaries or any director, officer, trustee or employee of any of the foregoing:
>
> (a) Been involved in any antitrust, copyright or patent litigation?  X Yes _ No.
>
> (b) Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state antitrust or fair trade law?  X Yes _ No.
>
> (c) Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state securities law or regulation? _ Yes  X No.
>
> (d) Been involved in any representative actions, class actions, or derivative suits?  X Yes _ No.
>
> If the answer to any of the above, 27(a) - 27(d) is "yes", please attach full details.  [attached response]  AHS has periodically been a plaintiff member of a class in action on refunds against vendors. AHS and Atlantic Ambulance have been named, together with Newton Memorial Hospital, in a civil action filed by Med Alert Ambulance Co. alleging unfair trade practices and anti-trust violations with respect to the transport of cardiac patients from Newton to Morristown Memorial.
>
> It is agreed that with respect to Questions 25 through 27 above, if such claim, knowledge, information or involvement exists, any such claim or any claim or any claim or action arising therefrom is excluded from the proposed coverage.

(Defs.' 56.1 Statement ¶ 11; Kelly Certif. Ex. K; Pls.' 56.1 Resp. ¶ 11.)  The renewal applications were sent to Christine McSweeny, an underwriter that worked at 80 Pine Street,

New York, NY.  (*See* Defs.' 56.1 Statement ¶¶ 10, 12; Kelly Certif. Ex. K; Pls.' 56.1 Resp.

¶¶ 10, 12; Manganiello Aff. ¶¶ 4–5.)  AHS takes the position that the renewal application gave

National Union actual notice of the Med Alert claim during the 2003–2004 policy period, and

therefore entitles them to coverage under the 2003–2004 Policy.  (*See* Pls.' Cross Mot. for

Summ. J. at 11–15.)

The 2003–2004 Policy contains the following relevant provisions:

**DECLARATIONS**

ITEM 3. POLICY PERIOD: From May 1, 2003 to May 1, 2004.
. . .

ITEM 8. NAME AND ADDRESS OF INSURER . . .

> National Union Fire Insurance Company of Pittsburgh, Pa.
> 175 Water Street
> New York, NY 10038

. . .

**1. INSURING AGREEMENTS**
. . .

**COVERAGE C: ORGANIZATION ENTITY COVERAGE**

This policy shall pay on behalf of the Organization Loss arising from a Claim first made against the Organization during the Policy Period (if applicable) and reported to the Insured pursuant to the terms of this policy for any actual or alleged Wrongful Act of the Organization. . . .

**2. DEFINITIONS**
. . .

(b) "Claim" means:

> (1) a written demand for monetary relief; or

> (2) a civil . . . proceeding for monetary . . . relief which is commenced by:

4

(I) service of a complaint or similar pleading . . .

**7. NOTICE/CLAIM REPORTING PROVISIONS**

**Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations.  If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.  A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any insured, by the Named Organization on behalf of any Insured or by the Insurer, whichever comes first.** . . .

<u>**ENDORSEMENT # 13**</u>

**Notice of Claim to Risk Manager**

(a)      The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable after the Claim is reported or first becomes known by the risk manager or general counsel (or equivalent position) of the Organization, but in <u>all</u> events a Claim must be reported no later than either:

> (1) anytime during the Policy Period or during the Discovery Period (if applicable); or
>
> (2) within 30 days after the end of the Policy Year or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(Kelly Certif. Ex. B.)

AHS filed this action in the Superior Court of New Jersey, Law Division, on February 18, 2008, alleging that Defendants improperly denied coverage under an insurance policy.  On March 6, 2008, AHS filed an Amended Complaint to clarify that they had successive claims-made insurance policies from May 2000 until May 2005.  On April 3, 2008, Defendants removed

the action to this District on the basis of diversity jurisdiction.  AHS's Amended Complaint contained two counts: (1) declaratory relief from Defendants' denial of coverage in connection with an antitrust lawsuit that had settled, and (2) breach of the covenant of good faith and fair dealing.  Defendants filed their Answer (Doc. No. 4) on May 1, 2008, raising *inter alia*, the affirmative defenses that AHS's claims are barred by the terms, exclusions, conditions and limitations contained in the insurance policy at issue, and that AHS failed to comply with the provisions of the policy.  On October 15, 2010, Defendants moved for summary judgment on all issues, or alternatively for summary judgment in favor of Defendant AIG on the theory that AIG had no obligation to AHS.  AHS opposes Defendants' motion for summary judgment and has made a cross-motion for summary judgment.  The Court will consider these motions together.

## II.    ANALYSIS

A party seeking summary judgment must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita*, 475 U.S. at 587; *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because the matter

involves diverse parties, and the amount in controversy exceeds $75,000.

*A. The 2004–2005 Policy Period*

Defendants first argue, and AHS does not appear to dispute, that the Med-Alert claim is not entitled to coverage under the 2004–2005 Policy. This Court agrees. The 2004–2005 Policy was effective from May 1, 2004 to May 1, 2005. AHS was first made aware of the Med-Alert action in or about February of 2004 when AHS's general counsel received a draft Complaint against AHS on behalf of Med Alert Ambulance, Inc. (Kelly Certif. Ex. D.) The Med-Alert action was eventually commenced in this District on April 5, 2004 with AHS acknowledging service of that action on April 26, 2004.

A claims-made insurance policy provides coverage if the claim is discovered and brought to the attention of the insurance company during the period of the policy, or within the policy's notice period for claims made outside of the policy period. *Zuckerman v. National Union Fire Ins. Co.*, 100 N.J. 304, 309–310 (1985). Here, AHS received notice of the Med-Alert action no later than April 26, 2004, when AHS acknowledged service of Med-Alert's complaint. Defendants correctly note that this claim was made prior to the beginning of the 2004–2005 Policy period (May 1, 2004 to May 1, 2005). Additionally, AHS disclosed in their renewal application for the 2004–2005 Policy that they had been "named . . . in a civil action filed by MedAlert Ambulance." (Kelly Certif. Ex. K.) By disclosing the Med-Alert action in the renewal form, AHS "agreed that . . . any such claim . . . or action arising therefrom is excluded from the proposed coverage" under the 2004–2005 Policy. *Id*. Therefore, AHS is not entitled to coverage for the Med-Alert action under the 2004–2005 Policy.

*B. The 2003–2004 Policy Period*

Turning to the 2003–2004 Policy, Defendants argue that AHS did not comply with the notice provisions set forth in the 2003–2004 Policy.  Specifically, Defendants point out that AHS failed to provide sufficient written notice of the Med-Alert action during the policy period or within 30 days after the end of the Policy Year or the underlying claim, as required by Endorsement 13 to the policy.  AHS's cross-motion for summary judgment argues that National Union had actual notice during the policy period by way of disclosures made in AHS's renewal application.  Because the policy's notice-of-claim requirement only required a "writing" and Endorsement 13 only required "written notice to the Insurer of any Claim," AHS argues that the renewal application, which gave actual notice of the claim, satisfied the policy's notice-of-claim requirements.  (Kelly Certif. Ex. B.)  AHS does not dispute that the August 17, 2004 letter seeking coverage under the 2003–2004 Policy was well beyond the policy's allotted reporting period.  Therefore, the only issue to resolve is whether AHS satisfied the policy's notice requirement by disclosing the Med-Alert action in the renewal application.

The parties do not dispute that New Jersey law applies to this dispute.  An insurance policy is "'simply a contract and its provisions should, of course, be construed as in any other contract.'"  *Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 151 (3d. Cir. 1992) (quoting *Caruso v. John Hancock Mut. Life Ins. Co.*, 57 A.2d 359, 360 (N.J. 1948)).  Because contract construction is typically a legal question for the court, this issue can be resolved at the summary judgment stage.  *See, e.g., Grow Co. v. Chokshi*, 403 N.J. Super. 443, 476 (App. Div. 2008) ("[W]hether a contract provision is clear or ambiguous is a question of law."); *Driscoll Constr. Co. v. State Dep't of Transp.*, 371 N.J. Super. 304, 313 (App. Div. 2004) ("The interpretation or

construction of a contract is usually a legal question for the court, 'suitable for a decision on a motion for summary judgment.'") (citation omitted).  The words of the policy are to be given their plain, ordinary meaning.  *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 595 (2001).  When the language of an insurance policy is unambiguous, a court "should not write a better policy for the insured than the one they purchased."  *Id.* (quoting *Gibson v. Callaghan*, 158 N.J. 662, 669 (1999)).   However, when language in an insurance contract is found to be ambiguous, courts will interpret the contract "to comport with the reasonable expectations of the insured."  *Id*.

Pursuant to the Notice/Claim Reporting Provisions in the 2003–2004 Policy, Article VII, "[n]otice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations."  (Kelly Certif. Ex. B.)  Item 8 lists "National Union Fire Insurance Company of Pittsburgh, Pa., 175 Water Street, New York, NY 10038" (hereinafter "Water Street address") as the name and address of the insurer.  (Kelly Certif. Ex. B.)  Pursuant to Endorsement 13, once the Insureds become aware of a claim they must report that claim no later than: "(1) anytime during the Policy Period or during the Discovery Period (if applicable); or (2) within 30 days after the end of the Policy Year or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured."  (Kelly Certif. Ex. B.)  The policy language at issue clearly requires written notice of a claim to a specified address within a specified time period.  This Court finds no ambiguity in the policy language.

This Court finds persuasive the courts' rulings in *American Casualty Co. of Reading, Pennsylvania v. Continisio*, 819 F. Supp. 385 (D.N.J. 1993), *aff'd*, 17 F.3d 62 (3d Cir. 1994), which held that documents included with a renewal application did not satisfy the claims-made

insurance policy's notice-of-claim requirement.  819 F. Supp. at 396–98; 17 F.3d at 69–70.  AHS attempts to distinguish *Continisio*, noting that the documents submitted with the renewal application in that case did not give the insurer actual notice of a claim, but required the insurer to draw that inference (i.e., constructive notice).  *See* 819 F. Supp. at 399; 17 F.3d at 69. However, AHS misses the broader point emphasized in *Continisio* that courts will strictly enforce notice-of-claim requirements due to the purpose of sending notice under a claims-made insurance policy.  *See* 819 F. Supp. at 398–99; 17 F.3d at 69–70.  As *Continisio* recognized, under New Jersey law the purpose of sending notice under a claims-made insurance policy is to invoke coverage.  819 F. Supp. at 398; 17 F.3d at 68; *see also Zuckerman*, 100 N.J. at 324.[2]  As a result, "the term 'notice' must be construed as requiring something more than a coincidental transmission of information."  *Continisio*, 819 F. Supp. at 398.  Indeed, *Continisio* explained that "notice must be given through formal claims channels because we recognize that the information needed, *or at least the perspective utilized in reviewing it*, varies when predicting the probability of future losses and recognizing the need to investigate a claim that may be made based on past

---

[2]The New Jersey Supreme Court in *Zuckerman* distinguished the claims-made insurance policy from the traditional "occurrence" insurance policy, where "[t]he notice requirement . . . [does] not define the coverage provided by the policy but rather was included to aid the insurance carrier in investigating, settling, and defending claims."  100 N.J. at 323–24.

> By contrast, the event that invokes coverage under a "claims made" policy is transmittal of notice of the claim to the insurance carrier. In exchange for limiting coverage only to claims made during the policy period, the carrier provides the insured with retroactive coverage for errors and omissions that took place prior to the policy period. Thus, an extension of the notice period in a "claims made" policy constitutes an unbargained-for expansion of coverage, *gratis*, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy.

*Id.* at 324.  For this reason, the *Zuckerman* court expressly rejected application of the appreciable prejudice standard—which permits waiver of insurance notice requirements—to claims-made insurance policies.  *Id.*

occurrences." 17 F.3d at 69 (emphasis added).  A renewal application sent to an underwriter for the purpose of identifying possible claims for the exclusion of coverage from a future policy period ostensibly serves a different purpose than a notice-of-claim, which seeks coverage under an existing policy.

AHS correctly points out that the policy does not provide much guidance regarding the substance of the notice other than that it be a "writing."  Nevertheless, AHS does not dispute that it failed to satisfy the sole notice-of-claim requirement imposed by the policy—namely, that notice be mailed to the address provided by Item 8, the Water Street address.  The parties do not dispute that the renewal application was sent to underwriter Christine McSweeny at 80 Pine Street, New York, NY.

AHS attempts to bypass the notice-of-claim requirement by arguing that the policy language is confusing.  (*See* Pls.' Br. at 18 ("National Union's Policy contained a 'labyrinth' of clauses which fail to reasonably apprise the insured that coverage would evaporate if notice of a claim is sent to National Union at a different address.").)  The Court disagrees.  The policy's notice-of-claim provision, Article VII, explicitly refers to Item 8, where the Water Street address is readily apparent.  Endorsement 13 informed the insured that "written notice" was a "condition precedent to the obligations of the Insurer under this policy."  (Kelly Cerif. Ex. B.)  Article VII and Endorsement 13 are unambiguous and do not conflict with one another.[3]

---

[3]This policy language and construction is not only similar, but at least as clear as the language and construction that was found to be unambiguous in *Continisio*. *See* 17 F.3d at 67–68 (finding no ambiguity in policy language requiring insured to give written notice to the insurer at a specified address, where the clarifying endorsement provided that "[a]ll claims or inquiries relating to the Policy should be directed to Manager, Professional Liability Claim[s], Continental Casualty Company at the above address").  While the policy language in this case did not identify a particular recipient like the policy in *Continisio* did, Article VII directed that the notice be sent "to the Insurer named in Item 8 of the Declarations *at the address indicated in Item 8 of the Declarations*."  (Kelly Certif. Ex. B (emphasis added).)  Item 8 identified National Union and

Furthermore, AHS's claim that the policy language is confusing is belied by AHS's prior and subsequent history of submitting claims to the Water Street address.  Here, for instance, after the Med Alert action was filed, AHS made untimely efforts to send a notice-of-claim to the Water Street address with the July 23, 2004 letter seeking coverage under the 2004–2005 Policy and the August 17, 2004 letter making the same claim under the 2003–2004 Policy.  (Kelly Certif. Exs. H, F.)[4]  Moreover, Defendants have presented evidence that, on a number of occasions involving different claims, AHS sent notices of claims to the Water Street address before and after the Med Alert action claim.  (Keane Aff. ¶¶ 8–11 & Ex. A.)   This history of compliance demonstrates that AHS understood the notice-of-claim requirement.  *See Continisio*, 819 F. Supp. at 397–398 (supporting interpretation of the notice-of-claim requirement with insured's subsequent written claims that provided actual notice of claims).

AHS also argues that Defendants waived the notice requirement, because the underwriter should have notified AHS that the disclosure of the claim on the renewal application did not satisfy the notice requirement.  "Waiver is the voluntary and intentional relinquishment of a known right." *Knorr v. Smeal*, 178 N.J. 169, 177 (2003).  However, nothing about the renewal application purports to inform the insurer that the insured is seeking to file a claim for coverage under an existing policy, and AHS does not contend that Defendants ever represented—either affirmatively or tacitly—that disclosure of claims on a renewal application would satisfy the

---

listed the Water Street address.

[4]The very existence of these "First Notice of Loss" / "First Report of a new loss" letters tends to indicate that AHS did not believe that the renewal applications satisfied the notice-of-claim requirement.

notice-of-claim requirement.[5]

This Court's strict application of the notice requirement is consistent with the Third Circuit's decision to join "a growing line of cases prohibiting an insured from insisting that its insurer's underwriting department sift through a renewal application and decide what should be forwarded to the claims department on the insured's behalf." *Continisio*, 17 F.3d at 69.  The policy language in this case was not ambiguous.  The insured did not timely file its notice of claim under the applicable policy.  The renewal application did not comply with the policy's notice-of-claim requirement, because it was sent to an underwriter at a different address for a different purpose.  Under these circumstances, New Jersey law demands that this Court not write a better policy for the Insured than the one they purchased.  *See Zacarias*, 168 N.J. at 595.

This Court's conclusion with regard to coverage also disposes of Plaintiffs' implied covenant of good faith and fair dealing claim.  Defendants' enforcement of the policy terms as written does not constitute a breach of the implied covenant of good faith and fair dealing.  *See, e.g.*, *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 109 (2007) (explaining that the duty of "'[g]ood faith' entails adherence to 'community standards of decency, fairness or reasonableness,' . . . requires a party to refrain from 'destroying or injuring the right of the other party to receive' its contractual benefits," and that a breach of this duty requires proof of "bad motive or intention") (citations omitted).  Consequently, the Court will grant summary judgment in favor of Defendants on both Counts of Plaintiffs' Amended Complaint.

---

[5]To the extent that AHS argues that Defendants would not be prejudiced by waiver of the notice requirement, such argument is misplaced, because the New Jersey Supreme Court rejected the appreciable prejudice standard for claims-made insurance policies in *Zuckerman*, 100 N.J. at 324.

**III.     CONCLUSION**

For the aforementioned reasons, the Court will deny AHS's motion (Doc. No. 72) and

grant Defendants' motion (Doc. No. 65).  An appropriate form of Order accompanies this

Memorandum Opinion.


Dated:  April 11, 2011

                                             _____S/Garrett E. Brown, Jr._____
                                             Garrett E. Brown, Jr., Chief Judge
                                             United States District Court